Metryclub Gardens Association, the plaintiff, is a nontrading corporation which was organized in 1929 for the purpose of protecting and maintaining as an attractive and permanent residential section the subdivision in Jefferson Parish known as Metryclub Gardens. Its charter authorizes it to receive, possess and exercise all of the rights established in favor of Metairie Park, Inc., and its successors in title, and particularly to enforce the covenants and obligations contained in acts of sale by the Metairie Park, Inc.
During 1937 and 1938 the defendant, Miss Sallie Council, by authentic acts, acquired from Metairie Park, Inc., lots 1 and 2, in square "N" of the subdivision, which front on Duplessis Street and are bounded *Page 57 
on the west by Woodvine Avenue and on the east by Park Road, and her home is now located on these lots. Miss Council's acts of purchase contain the following covenant:
"This property is sold subject to an assessment for the upkeep of the roads, parkways, care, development and beautification of the entire subdivision. This assessment shall be payable semi-annually in advance, on the first days of January and July in each year and shall not exceed fifty cents per front foot per year unless increased by a majority vote of property holders by the front foot through the medium of the Parking Commission organized for that purpose."
Plaintiff sued defendant for $269.97 representing assessments due from January 1, 1940, to June 30, 1945. Miss Council's defense is that she did not receive the benefits to which she was entitled, particularly the police protection which plaintiff was required to furnish, and that plaintiff did not carry out its obligations under the agreement.
From a judgment of the Twenty-fourth Judicial District Court for the Parish of Jefferson dismissing the suit, plaintiff has appealed.
In this court, defendant filed an exception of no cause of action, and in urging its maintenance counsel argues that plaintiff's charter contains no provision empowering it to bring suits, nor is there any evidence attached to the petition showing that this suit was ever authorized. Plaintiff's counsel contend that the exception strikes at the want of capacity or lack of authority of plaintiff to initiate this suit; that it relates to form and should have been filed in limine litis under C. P. art. 344, and it therefore came too late to have any legal effect.
[1, 2] We find it unnecessary to examine into the timeliness of the exception, as the right to sue in courts of justice to enforce or vindicate their interests is vested in all corporations legally created and existing. Where nontrading corporations are concerned, such authority will be found in Act No. 254 of 1914 § 5, which provides that such corporations "shall be capable in law to sue and be sued * * *."
[3] Respecting counsel's contention that there is no authority attached to the petition, we notice that the verifying affidavit was executed by the president of the association and conforms to the provisions of Act No. 157 of 1912, as amended Dart's Gen.Stat. § 1483, and we know of no provision of law which requires that any special authority or resolution of the board of directors of a corporation be attached to the petition when a suit is brought in the corporate name. There is no merit to the exception.
The defendant herself did not testify, and her complaints and grievances against the association were shown by the testimony of three witnesses. The gravamen of the complaints is that the board of managers of the association expended most of the assessments collected for improvements and work to Northline Street, and that other locations in the subdivision were neglected. Miss Kitty Council, defendant's sister and her agent, testified that weeds had never been cut in the vicinity of defendant's home; that the roadbed of Duplessis Street had been dug out and refilled with gravel, and in the process of the work gravel was "pitched" onto the sidewalk of square "O" and made an unsightly levee, and also that there exists a hole in Duplessis Street. She further complained that when oil was spread on the gravel roads none was placed on three strips near defendant's home, and that the prevalence of dust in the vicinity resulted. There was also some testimony by Miss Council regarding the discontinuance of garbage collection and watchman service, and the lack of proper garden improvements and tree trimming in her vicinity.
As to the complaint about the discontinuance of garbage collection, defendant's counsel admits that during 1943 she requested that it be discontinued, because she had a garbage disposal unit in her home. Regarding the watchman service, the testimony of the secretary of the association shows that a watchman was regularly employed for the subdivision and that at no *Page 58 
time were the residents without this service.
Mrs. Edward B. Ludwig, who resides on Woodvine Avenue, testified that the streets were in a "disgraceful condition," and the gardens are "just like anybody's back lots." It was her opinion that an engineer should have been put on the board of managers. She admitted that there had been a considerable sum of money spent in the subdivision, but said "the money is spent for improvements, all right, but by people who don't know how to spend it or what to spend it on."
Felix F. Tranchina, who lives some squares distant from defendant's property, testified that the association has done nothing toward improving his street, and that he suffers from the dust. His major complaint was that while there had been some work done, Northline Street was the beneficiary and received preference.
The plaintiff association is governed by a board of managers elected each year by a majority vote of the property owners. The members of the board and the officers of the association serve without remuneration. They administer the assessment fund and decide upon the improvements to be effected and the expenditures to be made.
The secretary of the association testified as to the receipts from 1939 through 1945 and gave a detailed itemization of the expenditures, and it appears that during those years there was a deficit in the treasury of the association.
Benjamin T. Brown and Rev. Donald H. Wattley, members of the board of managers, testified that all receipts derived from the assessments were expended to the best advantage of all property holders, and that the subdivision has the benefit of garbage collection, watchman protection, street graveling and oiling, and the services of a regularly employed gardener. They stated that most of the funds were expended for improvements on Northline Street, which runs from Palm Street in New Orleans through the subdivision to the Metairie Golf Club, and that it is the main artery of ingress and egress for the residents of Metryclub Gardens; that repeated complaints had been made to the association about the condition of the surface of Northline Street, the most general complaint being that it was dusty and that persons driving over it had the unpleasant experience of having their cars become dusty and coated with mud. The board of managers deemed it necessary to reconstruct Northline Street, and thirty-two carloads of gravel were bought and spread on that street and in other sections of the subdivision.
Their testimony shows that a considerable quantity of gravel was used on all roadways, particularly in the area of the Council residence, and that somewhat in excess of two carloads was used in resurfacing Duplessis Street in front of defendant's property for a distance of two blocks. They also testified regarding what they termed a "dust allaying program," which consisted of spreading oil upon the gravel roads. Duplessis Street, Park Road, and Woodvine Avenue were treated in this manner, and the roadway in front of defendant's property, as well as those contiguous, were oiled, and in this section the highest concentration of oil was used.
[4] From a reading of the record as a whole we fail to find evidence of any discrimination against the defendant. It is true that most of the street work, gardening and tree trimming was done to Northline Street, the principal thoroughfare, but all sections of the subdivision, including the immediate vicinity of the Council home, which seems to be an unimproved section, received a part of the services.
Mr. Brown and Rev. Wattley stated that theirs was a thankless job, and that they were doing everything which, in their opinion, they deemed best, not for any particular portion of the subdivision, but for the benefit of all its inhabitants, and that while most of the work had been done to Northline Street and the front part of the subdivision, this was necessitated by the fact that that street was the main artery and it was more necessary to keep it in repair than any other in the subdivision.
[5] It appears that the complaints of the defendant and her witnesses amount to criticisms that the board of managers has *Page 59 
unwisely spent the money. If such is a fact, there is no ground upon which the defendant is privileged to quit paying the assessments which she is legally bound to pay. It seems to us that if defendant has any grievance along this line, she should air it at a meeting of the association.
For the reasons assigned, the judgment appealed from is reversed, and it is now ordered that there be judgment in favor of plaintiff, Metryclub Gardens Association, and against defendant, Miss Sallie Council, for the full sum of $269.97, with legal interest thereon from judicial demand until paid, and for all costs.
Reversed.