DECATUR COUNTY RURAL ELECTRIC MEMBERSHIP CORPORATION
*v.* PUBLIC SERVICE COMPANY OF INDIANA.

[No. 372A153. Filed February 13, 1974. Rehearing denied March 28, 1974. Transfer denied July 8, 1974.]

*John J. Dillon* and *Virginia Dill McCarty,* Indianapolis, *Wickens & Wickens,* Greensburg, for appellant.

*Greg K. Kimberlin* and *Duejean C. Garret,* Plainfield, *Leon J. Humbert,* Greensburg, and *Sharpnack, Bigley & David,* Columbus, of counsel, for appellee.

LOWDERMILK, J.—The Decatur County Rural Electric Membership Corporation (REMC), appellant, appealed herein from an adverse judgment granted in the trial court to Public Service Company of Indiana, Inc. (PSCI), appellee, in which certain electric utility property owned by REMC was condemned pursuant to IC 1971, 8-1-13-19, Burns § 55-4418a (1973).

The facts are that on three occasions covering a ten year period the city of Greensburg, Indiana, annexed certain tracts of land to the city. Prior to these annexations the residents in these areas were lawfully rendered electric utility service by REMC. PSCI, through its predecessors, holds an indeterminate permit to serve the city of Greensburg and at the time of the annexation of the territory in issue herein to the present, has continued to render the city's residents electric utility service. Negotiations were had for purchase or acquisition of REMC's facilities located in the annexed area by PSCI. These negotiations were unsuccessful. PSCI then filed its complaint for condemnation of such property and the appointment of appraisers, which the trial court granted in its judgment of March 7, 1972, and from which judgment REMC appeals.

ISSUES:

This appeal presents for review four issues which were briefed and argued to the court:

1. Is IC 1971, 9-1-13-19, Ind. Ann. Stat. § 55-4418a (Burns 1973), under which PSCI was granted the power to condemn REMC's property, unconstitutional?
2. Did PSCI's grant of power to condemn and serve the annexed area lapse for nonuser?
3. Has PSCI met the conditions of the Public Service Commission Act which gives the Public Service Com-

mission exclusive jurisdiction and requires the commission's approval for condemnation actions?

4. Was PSCI's complaint defective due to an inadequate description of the property to be condemned and a failure to include franchise rights as property taken and the value of those rights?

ISSUE ONE:

It is contended by REMC that IC 1971, 9-1-13-19, Burns § 55-4418a (1973), which will hereinafter be designated as 18a, is unconstitutional and that the statute, commonly known as the REMC Act, authorizes the taking of appellant's franchise right to serve the annexed area without just compensation. REMC also contends that the franchise right to serve a particular territory is a property right which cannot be taken without just compensation. REMC further urges that the General Assembly never intended an REMC organized under the REMC Act was to be a public utility within the meaning of the Public Service Commission Act, and cites for its authority IC 8-1-13-18, Burns § 55-4418(a), as follows:

> "(a) Any corporation organized or admitted to do business in the state under this act shall be subject to the jurisdiction of the public service commission for the purpose of fixing rates to be charged to patrons of such corporation for energy, and for such purpose said public service commission is given jurisdiction to proceed in the same manner and with like power as is provided by the 'Public Service Commission Act' in the case of public utilities."

REMC further urges that the REMC Act granting franchise property rights without qualification prevails over the earlier Public Service Commission Act, which is a general act enacted in 1913 regulating many utilities and that REMCs come under the REMC Act which is a special act specifically providing monopolistic electric services to rural areas, enacted in 1935, and that the special act will prevail over the general statute in case of repugnancy.

These contentions have been discussed at length in opinions of this court and our Supreme Court, the most recent of which

is the case of *Decatur County REMC* v. *Public Service Company of Indiana* (1973), 261 Ind. 128, 301 N.E.2d 191, which answers, in our opinion, many of the legal points raised by appellant's brief and relied upon for reversal.

In *Decatur Co. REMC, supra,* the court rejected Decatur Co. REMC's contention that it was not a public utility and held that statutory language found in § 18a clearly established that the Legislature could see no distinction between an REMC and other public utilities and that the legislative intent was to apply the same procedures found in the two statutory provisions in all utilities to include REMCs.

IC 8-1-13-19, Burns § 55-4418a reads as follows:

"Municipality annexing territory served by electric utility—Purchase of property—Condemnation.—Whenever a municipality in which a public utility (including a corporation organized, or admitted to do business, under this act [8-1-13-1—8-1-13-27]) is rendering electric utility service under a franchise, license or indeterminate permit or in which a municipality-owned utility is rendering electric utility service, as the case may be (such public or municipal utility being hereinafter called the 'franchised utility'), annexes additional territory and such annexed territory includes any territory in which the franchised utility was not authorized to render electric utility service immediately prior to such annexation but in which some other public utility (including a corporation organized, or admitted to do business, under this act) or municipally-owned utility (such public or municipally owned utility being hereinafter called the 'other utility') was lawfully rendering electric utility service at such time, then the franchised utility and the other utility shall promptly negotiate for the purchase by the franchised utility of the property owned by the other utility within the annexed territory and used and useful by the other utility in or in connection with the rendering of electric utility service therein. In the event that such property has not been purchased by the franchised utility within 90 days after such annexation takes place, then the franchised utility may bring an action in the circuit or superior court of the county where such municipality (or the major part thereof in area) is located against the other utility, as defendant, for the condemnation of such property

of the other utility. Until and unless such purchase or condemnation is effected, the other utility shall have authority to operate within the portion of the annexed territory in which it was lawfully rendering electric utility service immediately prior to such annexation."

REMC in the case at bar relies on the case of *Kosciusko County REMC* v. *Public Service Commission* (1948), 225 Ind. 666, 77 N.E.2d 572. The *Kosciusko* case, *supra*, was cited in *Decatur Co. REMC, supra,* as holding unequivocally that REMCs are public utilities.

In the case at bar REMC holds a certificate of convenience and necessity which was granted in 1937 and such certificate is subject to termination according to law under § 18a. *Decatur Co. REMC, supra.* See, also, *Morgan Co. REMC* v. *Public Service Co. of Indiana* (1970), 253 Ind. 541, 225 N.E. 2d 826, wherein Chief Justice Arterburn illustrated the futility of appellant's similar argument as follows:

". . . The argument is then essentially that the right to serve a particular territory is a valuable property right for which compensation should be paid prior to any infringement or extinction.

Appellant was granted its certificate of public convenience and necessity by the Public Service Commission in 1939. Appellant's certification was, then, no more than an indeterminate permit. *Southern Indiana Gas & Electric Co.* v. *Indiana Statewide Rural Electric Cooperative Inc.* (1968), [251] Ind. [459], 242 N.E.2d 361, Burns' Ind. Stat. Ann. §§ 54-604, 54-105. As such appellant's right to serve the area in question was subject to termination 'according to law.' One such means of termination was provided for in Burns § 55-4418a. That statute establishes the procedure whereby termination is effected. It clearly states that the property subject to purchase or condemnation is the used or useful property of the appellant connected with its rendering of electric service in the area.

Appellant may continue to operate these facilities until they are acquired either by purchase or condemnation. It cannot be said, therefore, that appellant's property is impaired or taken without just compensation."

Appellant REMC next argues that § 18a violates the equal

protection clause guaranteed by the Constitution of the United States and of the State of Indiana.

This argument is best answered by the words of Justice Hunter in *Decatur Co. REMC, supra,* wherein he speaks on the matter as follows:

> "Appellant's contention that Section 18A violates equal protection, because it applies only to electric utilities, is also without merit. It is the duty of the legislature to promulgate statutes regarding the operation of public utilities. A legislative decision to limit the subject matter of such a statute to electric energy is clearly reasonable and, hence, permissible, so long as the statute does not result in invidious discrimination against any one electric utility or any one group of the same.

> We, therefore, hold that Section 18A of the REMC Act, on its face and in its application, is consistent with the notions of equal protection and, hence, does not offend the Constitutions of either the United States or Indiana."

REMC further contends that PSCI could delay for a long period of time after the territory is annexed before bringing a condemnation action pursuant to § 18a and in this case waited eleven years before seeking condemnation, thus causing damage to REMC. However, it is axiomatic that any damage suffered as a result of condemnation is recoverable in a trial on damages if any exist.

REMC next contends that § 18a is unconstitutional because the Legislature did not have the power to authorize a taking by condemnation of property already devoted to public use and submit it to the same public use.

Justice Hunter, in *Decatur Co. REMC, supra,* held on the question of § 18a improperly authorizing the taking of property already devoted to a public use as being unconstitutional, that § 18a was a permissible expression of legislative policy and that the court could find no constitutional infirmity in the state's delegation of its powers of condemnation to effectuate legitimate state policy, and that portion of the Act was constitutional.

REMC next contends that § 18a is unconstitutional in that it violates the supremacy clause of the United States Constitution, Article 6, Clause 2. However, in *Decatur Co. REMC, supra,* Justice Hunter clearly discussed this issue and concluded:

". . . Therefore, Section 18A in no way contravenes the Supremacy Clause."

We, therefore, hold that the trial judge did not commit error in excluding REMC's proffered evidence as to the condemnation of the territory in issue for the claimed reason that the taking would have a deleterious effect on the federal purposes of the REMC, including the inability to pay federal mortgages and to serve customers.

Appellant REMC's next contention alludes to the issue of whether or not the United States is an indispensable party in an 18a condemnation proceeding, and its immunity from suit. Neither the United States of America nor any of its agencies, including the Rural Electrification Administration (REA) was made a party defendant.

Facts almost identical to the case at bar were resolved in the case of *Kosciusko Co. R.E.M.C., Inc.* v. *N.I.P.S.C.* (1967), 248 Ind. 482, 229 N.E.2d 811, and that case was determined under § 18a, wherein our Supreme Court held:

"The record presented to us discloses that the United States of America, Appellant's mortgagee, among other things, raised the question of its immunity to suit and indeed it appears from the record that at the time of the litigation in the trial court, there was no legislative authority for suit against the United States of America in matters of this character, although subsequently it appears that § 2410 of Title 28 of the U. S. Code, under certain conditions, waived its immunity to suit.

There is another phase which we think presents itself for our consideration and that is, who may raise the question—the mortgagor, Appellant herein, or the mortgagee? It cannot be stoutly argued that either the mortgagor or the mortgagee will be adversely affected, particularly when Appellant's origin and operating authority emanate from the State of Indiana and it is therefore subject to its laws.

Burns' § 55-4418a, *supra,* specifically provides for the present litigation when it states that the 'franchised utility', as plaintiff, may bring an action against the 'other utility' for condemnation. The parties hereto fill that description. This section of the Act and the authority upon which the litigation below was commenced does not require any other than the 'other utility', Appellant herein, to be named as defendant. Perhaps it could be argued that the enactment of said § 55-4418a served as an amendment by implication to Burns' § 3-1702, but we do not care to adopt this reasoning, nor do we think it necessary for a determination of this appeal.

... The only proposition we are required to answer in this appeal . . . whether under the facts and circumstances as they are presented herein the trial court had jurisdiction to dispose of the litigation and enter judgment on the issues. In other words, did the trial court have jurisdiction of the subject matter? . . . Certainly it cannot be seriously contended that the trial court, the Circuit Court of Kosciusko County, a constitutional court, absent the present question, did not have jurisdiction of the subject matter of this litigation . . .

\* \* \*

... we find no authority which attempts to suggest that the United States of America, mortgagee of Appellant, has such an interest in the controversy between the parties to this litigation that makes it a necessary party to the complete determination or settlement of this question as to whether Appellee is entitled to condemnation under Burns' § 55-4418a, wherein the 'franchised utility' may bring an action against the 'other utility' for condemnation.

\* \* \*

As stated above, the mortgagee did not ask to intervene; however, it appeared in the trial court as *amicus curiae* and, among other things, claimed its immunity to suit. Furthermore, we conclude no actual or real right of the mortgagee here was involved and particularly would this be true under Article II, Sec. 17, of the mortgage quoted above. In the present instance and so far as the record in this appeal discloses, the United States of America, as mortgagee of Appellant, does not contest the ruling of the trial court. Only the Appellant, the mortgagor, raises the question. We think it is not in position so to do. By its action, Appellee did not seek to affect any interest or right or lien which the mortgagee had. The Appellee sought only the condemnation of that property owned by the Appellant

within the territory annexed and which, under § 55-4418a, was required to be transferred to the Appellee upon the determination (in the absence of agreement) of the fair market value for cash thereof and the payment thereof. We go so far as to say that had the United States of America, the mortgagee of Appellant, sought to intervene, the court probably should and would have permitted it to do so. Thereby it would have submitted to the jurisdiction of the court. Its haughtiness in refraining from such request does not and cannot, in our opinion, divest the Kosciusko Circuit Court of jurisdiction over the Appellant and over the property *in rem* located within the jurisdiction and bailiwick of the court itself."

Under the holding in *Kosciusko, supra,* we are of the opinion that the United States of America, as mortgagee, is not an indispensable party under § 18a in this proceeding.

ISSUE TWO:

Did PSCI's grant of power to serve the annexed area lapse for nonuser?

As to Issue Two, REMC contends that PSCI's right to condemn the property annexed by the city of Greensburg lapsed by reason of the fact that the first portion of the annexed property had been annexed for eleven years and the last portion of the annexed property was annexed for one year prior to the filing of the action to condemn. REMC contends that eleven years is more than a sufficient length of time to commence condemnation proceedings and the failure of PSCI to start proceedings creates laches, as the right to condemn lapses.

REMC relies on the case of *Southern Indiana Gas & Elec. Co.* v. *Indiana Statewide Rural Electric Cooperative Inc.* (1968), 251 Ind. 459, 242 N.E.2d 361, to sustain its position. *Southern* is distinguishable from the case at bar in several aspects. It does not involve eminent domain; rather, it concerns the right of a utility to commence service under a 25 year old certificate of convenience and necessity where another utility had been providing electrical service for the

area. The court held that the right to service the area lapsed because of nonuser by the franchised utility. However, the court made no mention of the power of condemnation and said power was not an issue in that case.

The case at bar is further distinguished from *Southern* in that PSCI has no right to serve the area in question until after condemnation proceedings have been completed under § 18a.

Counsel for the respective parties have failed to furnish this court with any case law, and we have been unable to discover any case law, which holds that a grant of the power of eminent domain can lapse for nonuser. A careful reading of § 18a leads us to the conclusion, when applying the law to the facts in the case at bar, that the utility (PSCI) can in no event commence condemnation proceedings to take over the electric utility (REMC) serving the annexed area until after the lapse of a minimum of 90 days after such annexation takes place. Until and unless the franchised utility (PSCI) effects a purchase or condemnation, the other utility (REMC) has the authority to continue its operation within the portion of the area annexed by the city of Greensburg in which REMC was lawfully rendering electric utility service immediately prior to such annexation.

Section 18a makes no mention of a lapse of the power of condemnation by the franchised utility's failure to negotiate for purchase or to bring its action to condemn the utility property in the annexed area. Thus, it is self evident that the Legislature specifically established a minimum time before which the power of condemnation could be invoked, but made no determination that said power must be exercised within a specific time after the minimum time.

*Nichols on Eminent Domain*, Vol. I, Ch. 3, discusses the exhaustion of the further exercise of the power of eminent domain as follows:

"§ 3.212. Exhaustion or further exercise of the power. When the power of eminent domain is granted by the legislature without any express provision as to the duration of the grant or to the number of times that it may be exercised, there has been considerable discussion of the question whether the power is exhausted by a single exercise, or remains in the party to whom it has been granted by the legislature unless it is expressly revoked, to be exercised from time to time as public necessity and convenience may require. The sounder view seems to be that when nothing to indicate a contrary intent appears, the power is a continuing one.

Consideration must be given to the object which was to be attained by the grant of the power. Unless the maximum amount of land authorized to be taken has been acquired, future needs in aid of the object sought may be satisfied by further exercises of the power. It has been held that the exercise of the power of eminent domain is not limited to present necessities.

An ineffectual attempt to exercise the power of eminent domain does not exhaust the authority nor does it preclude a subsequent valid exercise of the power. A failure to exercise the power of eminent domain does not constitute an abandonment thereof."

We find an analogous situation as to the time in which eminent domain may be exercised in the case of *City of Lebanon* v. *Public Service Co.* (1938), 214 Ind. 295, 14 N.E.2d 719. The city of Lebanon, acting under Burns § 54-607, which gave a municipality the authority and power to acquire by condemnation the property of any public utility actually used and useful for the use of the public then operating under a permit or franchise at the time the Act takes effect, was successful in condemning the property of the private utility lawfully operating within the city of Lebanon for many years. It is apparent that the doctrine and rationale of nonuser as applied by the court in *Southern* had no application to § 54-607 and also has no application in the exercise of eminent domain as authorized under § 18a. Thus, we find no legal basis to support REMC's contention that the power of condemnation granted under § 18a can lapse for nonuser.

Even if it could be argued that there were equitable grounds for allowing the power of condemnation to lapse for nonuser, it is our opinion that such grounds would not apply in this case. Section 18a specifically provides for negotiations between the franchised utility and the other utility. The evidence most favorable to the appellee clearly shows that good faith negotiations were being carried on between PSCI and REMC during the entire time from 90 days following annexation until condemnation proceedings were initiated. Thus, we know of no equitable principle which would allow the power of condemnation to lapse for nonuser in this case.

ISSUE THREE:

REMC next contends that PSCI did not meet the requirements of the Public Service Commission Act which required utilities seeking to purchase the property of another utility to receive prior approval of the Public Service Commission, which PSCI failed to obtain in the case at bar.

The act of annexation did not of itself authorize PSCI to begin providing services in the annexed area—which REMC was at that time authorized to serve.

REMC contends that the Public Service Commission Act requires PSCI to obtain approval and a certificate of public convenience and necessity with which PSCI failed to comply. Specifically, IC 1971, 8-1-2-84, Burns § 54-510 (1973) governs acquisition of another utility's property. Said last mentioned statute does not apply to the facts in the case at bar for the reason it governs the purchase and sale of utilities' properties serving the same area. The Public Service Commission has exclusive jurisdiction over disputes between parties over territories to be served and trial courts are without jurisdiction as to that problem.

This same issue was argued before our Supreme Court and rejected by it in *Decatur Co. REMC, supra,* wherein the court stated:

"It is Decatur REMC's position that IC 1971, 8-1-2-84 (Ind. Ann. Stat. § 54-510 [1951 Repl.]) implicitly provides that a condemnation proceeding brought pursuant to Section 18A requires approval by the Public Service Commission and by the stockholders of Public Service Company of Indiana.

\* \* \*

We reject this argument for two reasons. First, 8-1-2-84 makes no mention of condemnation actions, but, rather, deals only with voluntary sales or leases. · Second, Section 18A makes no reference to the requirements of 8-1-2-84. In the absence of explicit language to the contrary, we must assume that the legislature intended to exempt condemnation actions from the requirements of 8-1-2-84."

In the case at bar there is no dispute that the annexed areas were included in REMC's territory prior to annexation and that PSCI seeks to condemn REMC's facilities in this territory. PSCI relies upon the cites the case of *Decatur County R.E.M.C.* v. *Public Service Co. of Indiana* (1971), 150 Ind. App. 193, 275 N.E.2d 857, in which case Judge Buchanan of this court, on the proposition of judicial review of the Commission's decision, said:

"Once the Commission makes its decision, the parties are free to proceed accordingly. If the Commission finds that the Property was included in Decatur's service territory, then the Company may proceed under IC 1971, 8-1-13-19, Ind. Ann. Stat. § 55-4418a (Burns 1971), and condemn the annexed area. Any other questions concerning the impact and interpretation of Burns § 55-4418a must wait until that statute has been properly brought into play, and that cannot occur until it is determined which party had the initial right to service the Property. Conversely, if the Commission finds that the Property was excluded from Decatur's service territory, the matter is settled and Burns § 55-4418a has no effect. Any decision of the Commission is subject to judicial review by this court under the provisions set out in IC 1971, 8-1-3-1, Ind. Ann. Stat. § 54-443 (Burns 1971.)"

We, therefore, hold that there is nothing for the Public Service Commission to determine precedent to the bringing of a § 18a condemnation action. Neither does said Commission

have power or authority to determine whether a § 18a action may or should be brought.

ISSUE FOUR:

REMC's last contention is that PSCI's complaint is defective in that it fails to specify the property to be condemned sufficiently to allow the trial court to determine whether the parties negotiated in good faith for the exact property sought to be condemned, as required by the Eminent Domain Act (IC 1971, 32-11-1-1 *et seq.,* Burns §§ 3-1701, *et seq.* (1973)).

It is further argued that negotiations conducted pursuant to the eminent domain law must be conducted in good faith pursuant to the same act. Here, the negotiations between REMC and PSCI for the purchase of the former's property did not include the franchise rights of REMC and said franchise rights were not listed in the complaint as property to be condemned.

These same contentions were made and argued in *Decatur Co. REMC, supra,* in which Justice Hunter put the question at rest by stating the following:

> "Finally, appellant argues that the Complaint in Condemnation is fatally defective for failure to specifically include franchise rights as property taken and that no good faith offer was made by Public Service Company in that value for franchise rights was not specifically included. As we have stated above, Decatur REMC had no right to compensation for any franchise due to the waiver inherent in the issuance of an indeterminate permit. Thus, we are unable to discern any foundation for appellant's contention."

PSCI makes the further contention that its complaint did sufficiently describe the exact property to be condemned. The complaint in the case at bar was patterned from a complaint that has been completely reviewed by our Supreme Court and found to be sufficient in all respects. *City of Lebanon* v. *Public Service Company, supra.*

Finally, PSCI contends that § 18a permits the condemnation

of property owned within the annexed territory and used and useful in connection with the rendering of electric utility service therein and that such property was specifically encompassed in both the offer and complaint of PSCI.

This court held, in *Stone* v. *Public Service Company of Indiana, Inc.* (1973), 157 Ind. App. 328, 300 N.E.2d 121, 124, as follows:

> "The description in a complaint is sufficient if it will enable one skilled in such matters to locate the land and, in the case at bar, to locate the easement property to be appropriated with a general description of where the three structures will be located. The exact location of the structures is a factual situation to be proved in the trial of the damages. *Hagemann et al.* v. *City of Mount Vernon et al.* (1958), 238 Ind. 613, 154 N.E.2d 33; *Darrow* v. *Chicago, etc., R. Co.* (1907), 169 Ind. 99, 81 N.E. 1081."

We are, therefore, of the opinion that the complaint in the case at bar was sufficiently adequate to enable REMC to locate the property being condemned.

Finding no reversible error, the judgment is affirmed.

Robertson, P.J. and Lybrook, J., concur.

NOTE.—Reported at 307 N.E.2d 96.