DECATUR COUNTY RURAL ELECTRIC MEMBERSHIP CORPORATION
v. PUBLIC SERVICE COMPANY OF INDIANA, INC.

[No. 1-1075A179. Filed October 6, 1976.]

*Hubert E. Wickens, Don Hubert Wickens, W. Michael Wilke*, of Greensburg, for appellant.

*Duejean C. Garrett,* of Plainfield, *John T. Sharpnack, Sharpnack, Bigley & David,* of Columbus, *Leon J. Humbert,* of counsel, of Greensburg, for appellee.

ROBERTSON, C.J.—This is an appeal by defendant-appellant, Decatur County Rural Electric Membership Corp. (REMC), appealing the overruling of its objection to a condemnation by plaintiff-appellee, Public Service Company of Indiana, Inc. (PSI). REMC argues on appeal that PSI failed to make a good faith effort to purchase property owned by REMC, that the Board of Directors of PSI failed to authorize the bringing of condemnation proceedings as they allegedly were required to do, that PSI abused its privilege of eminent domain by instituting proceedings solely for the purpose of harassment, that the trial court lacked jurisdiction to entertain the condemnation action, and that the trial court erred when it refused to order PSI to answer certain of REMS's interrogatories.

Finding no reversible error, we affirm.

The facts pertinent to this appeal follow: On April 3, 1967, the City of Greensburg annexed a portion of the Ryle Addition into its city limits including, through an oversight, six lots which were a part of a 1965 annexation. Subsequently, on February 17, 1969, the City of Greensburg annexed another portion of the same addition. PSI, which holds an indeterminate permit to service the City of Greensburg and its inhabitants, commenced efforts to acquire rights to the annexed properties based on the respective city annexation ordinances. Those efforts, including attempts to buy and condemnation proceedings, ultimately went through process to trial.

On October 3, 1969, PSI combined the separate condemnation proceedings so as to include all of the property annexed by Greensburg in both the 1967 and 1969 annexations, minus lots in the 1967 annexation that were discovered to have been part of a 1965 annexation and were already the subject of a

condemnation action.[1] In order to negate any duplicity or unnecessary legal consequences, PSI dismissed the suit relating to the 1967 annexation. Thus, the property involved in the successor suit had not been the subject of a solitary offer and attempt to purchase by PSI. Instead, this consolidated action related to the sum of the properties for which two separate offers to purchase had been made.

The primary component of REMC's first issue, PSI's failure to make a good faith effort to purchase the property, is addressed to the fact that the successor suit sought to condemn land for which there had not been a single, unified offer to purchase.

Citing *Dzur* v. *Northern Indiana Public Service Company* (1972), 257 Ind. 674, 278 N.E.2d 563, REMC contends that as the successor suit was instituted, PSI was obliged to extend another *single* offer to purchase the used and useful property located in the 1967 and 1969 annexations. In *Dzur, supra,* the utility sought to condemn a right-of-way 200 feet wide. After the Court determined that there was no present need for the 200 foot right-of-way, the utility, on remand, merely amended its complaint to seek a 150 foot right-of-way. There was no new concomitant offer made to the owner. The Supreme Court said, in reversing:

> "It is quite conceivable that the change in width of the right-of-way might have considerable effect on the willingness of the appellants to accept an offer to purchase such right-of-way." 257 Ind. at 678, 278 N.E.2d at 566.

The facts in the instant case are distinguishable. Here, though the annexation twice of certain lots created an awk-

---

1. In Cause #4472 lots numbered 19, 20, 25, 26, 31, 32 were being condemned. These same lots were included, redundantly, in the 1967 annexation. Suit was filed in Cause #5399 seeking to condemn again these lots and others. When the redundancy was discovered, those lots not included in #4472 were added to the present action and #5399 was dropped. The result was that instead of three condemnation actions, there were only two, without any redundancy.

ward and temporarily confusing situation, there was no change in what was sought to be purchased. It is clear that PSI intended to acquire all of the land annexed by the City of Greensburg and made offers for all of that land. Thus, we are constrained to the view that there was no change in property sought, and *Dzur, supra,* is not here applicable.

Neither are we persuaded by REMC's contention that PSI had no authority to combine two offers to purchase in one condemnation proceeding. Such authority exists in IC 1971, 32-11-1-2, (Burns Code Ed., 1976 Supp.), which states in pertinent part:

"All parcels lying in the county, and required for the same public use, whether owned by the same parties or not, may be included in the same or separate proceedings at the option of the plaintiff; . . . ."

REMC also asserts that PSI did not make a good faith effort to purchase as evidenced by PSI's refusal to include in its offers the value of easements, going concern value, or damage to the residue of REMC's system and as further evidence by the lapse of several years between the offers and the filing of the condemnation action.

In *City of Greenfield* v. *Hancock County REMC* (1974), 160 Ind. App. 529, 312 N.E.2d 867, as here, the offer was limited to tangible assets, whereas REMC's basis of valuation included intangibles. Judge Garrard perceived the good faith of both sides though they assumed such opposing legal positions. Also, there as here, the record disclosed that the REMC was reticent as to the offer made. There was no counter-offer or other action indicating a willingness to negotiate on the part of REMC. As in *City of Greenfield, supra,* the circumstances here convince us that PSI was justified in concluding that an agreement to purchase was not possible at any price PSI was willing to pay and that the condition precedent to suit, a good faith offer to purchase, was satisfied.

As to the lapse of time between the offers and the filing of the condemnation action, we note that such lapse is significant only if one disregards Cause #5399 and focuses upon the time of filing of this successor suit. We view REMC's position on this matter as not well taken.

Next REMC argues that the condemnation proceedings were not authorized by the PSI Board of Directors. REMC has directed our attention to no statute or case which indicates that the Board of Directors of PSI is the sole repository of authority for the bringing of such a condemnation action. While it is true that the Board of Directors is charged with the ultimate authority and responsibility for the management of the corporation, that is not to say that some functions and authority are not delegable to employees of that corporation. In light of PSI's pre-existing permit to service the City, the decision to acquire rights to the annexed property took on almost a perfunctory character and was within the ordinary conduct of PSI's business. Specific authorization by PSI's Board of Directors was not necessary.

REMC alleges that the purpose of this condemnation action was to harass REMC into involuntary submission to PSI. The kernel of this allegation is the dismissal of Cause #5399 and the institution of this action. As we have already approved the validity of and the motivation for this successor action, we are disinclined to reverse direction and label the action vexatious. Neither are we inclined, after finding this action justified, to review the past differences of these two protagonists in order to establish a pattern of harrassment and bad faith. Accordingly, we cannot say the trial court erred when it refused to address arguments that were divergent to the real issue before the court.

Citing *Decatur County REMC* v. *PSI* (1971), 150 Ind. App. 193, 275 N.E.2d 857, REMC asserts that the trial court

did not have jurisdiction over the subject matter while the action is pending before the Public Service Commission.

From the record before us, it appears that the issue placed before the Public Service Commission by PSI was the determination of who possessed the *prior* right to provide electric street lighting to a portion of the City of Greensburg. That issue was properly directed to the Public Service Commission, consistent with the holding in *Decatur County REMC, supra.* Since the issue in the instant action is the right to condemn under eminent domain relating to provision of electricity of private users in the City, resort to the circuit court was proper, pursuant to the statutory language of IC 1971, 32-11-1-2, (Burns Code Ed., Supp. 1976). We view the subject matter, as well as the theories, of the two proceedings as being distinct. Thus, we conclude that the trial court did have jurisdiction over the subject matter of this action.

REMC assigns as error the trial court's sustaining of PSI's objections to certain of REMC's interrogatories. Those interrogatories are:

"1. List the condemnation cases which you have pending involving the Decatur County REMC.

(a) The Court in which the condemnation case is pending and the cause number.

(b) The number of acres involved in each condemnation case.

(c) The number of REMC consumer members which will be required to accept service from PSI if the condemnation is granted.

(d) The number of miles of line which the REMC has in the annexed area which you are seeking to recover.

2. List the condemnation cases which you have pending against other Indiana REMC's.

3. For each of the years 1970, 1971, 1972, 1973 1974 and 1975, list the facilities which you acquired by trade, purchase or actual condemnation from any Indiana REMC. For each acquisition, state:

(a) The REMC from which you acquired facilities.

(b) The date of the final acquisition.

(c) The number of services in the area on the date you began serving the area.

(d) The number of services in the area at the present time.

(e) The revenues you have obtained from each area each year since the acquisition.

(f) The number of miles of line which you acquired from the REMC.

(g) The consideration paid to the REMC.

4. In addition to the areas acquired by condemnation proceedings, purchases or trades, list any other areas which were REMC territory before annexation but which you began serving after annexation without any payment to the REMC. For each such area, state:

(a) The name of the annexing City or town and the date of the annexation ordinance.

(b) The date you first served customers in the area.

(c) The number of persons served by you now.

\* \* \* \*

6. Since January 1, 1970, has PSI sold any of its facilities and services to any other utility? If so, state for each sale:

(a) The utility to whom the sale was made.

(b) The date of the sale.

(c) The consideration received by PSI.

(d) The inventory value of facilities given up by PSI.

(e) The number of consumers surrendered by PSI.

(f) PSI's revenues from the area in the year prior to the sale."

It is suggested that *Chambers* v. *Public Service Company of Indiana, Inc.* (1975), Ind. App., 328 N.E.2d 478, is authority for the proposition that these inquiries are proper. *Chambers, supra,* ceased to be such authority on September 20, 1976, when the Indiana Supreme Court held that objections to interrogatories in that case were properly sustained by the trial court.

We have perused the above interrogatories. It is immediately obvious that the information requested under No. 1 was at least as accessible to REMC as it was to PSI, and we are hard put to discern the relevance of any information that

might be adduced from the remainder of the questions. The interrogatories following No. 1 sought information more extraneous than did those in *Chambers, supra.* Further, there has been no showing on the record that REMC sustained any prejudice by reason of the trial court's refusal to require PSI to answer the interrogatories. *Jensen* v. *Indiana & Michigan Electric Co.* (1972), 257 Ind. 599, 277 N.E.2d 589. The trial court did not err in sustaining PSI's objections to those interrogatories.

Finding no error by the trial court, we affirm.

Lowdermilk and Lybrook, JJ., concur.

NOTE.—Reported at 355 N.E.2d 420.

