PUBLIC SERVICE COMPANY OF INDIANA, INC. *v.* DECATUR COUNTY RURAL ELECTRIC MEMBERSHIP CORPORATION, AMERICAN FLETCHER NATIONAL BANK & TRUST COMPANY AND UNITED STATES OF AMERICA.

[No. 1-1076A188. Filed May 31, 1977. Rehearing denied July 12, 1977. Transfer denied October 6, 1977.]

*Duejean C. Garrett,* of Plainfield, *Wycoff, Greeman & Kellerman,* of Batesville, for appellant.

*Don Wickens, Wickens & Wilke,* of Greensburg, for appellees.

ROBERTSON, C.J.—Plaintiff-appellant Public Service Company of Indiana, Inc. (PSI) brings this appeal from a denial by the trial court of its motion to correct errors. PSI raises the following issues in connection with the trial court's judgment sustaining objection to PSI's condemnation complaints, resulting in a dismissal:

1. Is PSI required to show a resolution by its Board of Directors authorizing the condemnation suits?
2. Did PSI make a good faith effort to purchase the property before filing its condemnation suits?

3. Did the right of PSI to bring the actions lapse prior to the filing of a complaint?

4. Were the complaints filed by PSI legally sufficient?

5. Do the condemnation suits of PSI interfere with the purpose of the National Rural Electrification Act?

6. Are the Indiana Eminent Domain Act, IC 1971, 32-11-1-1 *et seq.* (Burns Code Ed.) and Section 18(A) of the Rural Electric Membership Corporation Act, IC 1971, 8-1-13-19 (Burns Code Ed.) unconstitutional?

In addition, defendant-appellee, Decatur County Rural Electric Membership Corporation (REMC) raises two issues for our consideration:

1. May this Court on appeal rule on issues for which the trial court made no specific findings of fact and conclusions of law pursuant to Trial Rule 52:

2. Did the trial court have subject matter jurisdiction in this cause?

We reverse.

The relevant facts of this case are as follows. On November 8, 1965, the City of Batesville passed Ordinance #457 ("457") and on May 8, 1967, passed Ordinance #5-67 ("5-67"). Both ordinances annexed certain property contiguous to Batesville. REMC was the owner of electric utility facilities in the areas annexed by 457 and 5-67 at the time of the annexations.

After the annexations, PSI conducted field inventories of REMC's property located in the annexed areas and developed appraisals calculated by figuring the reproduction costs of the equipment when new, minus depreciation. Severance damages were determined for the property within 457, but PSI determined that no severance damage would be realized from the acquisition of property in 5-67.

On May 3, 1966, PSI's Manager, Clarence Callon, made a verbal offer to REMC for the purchase of the property in 457. Callon was told by REMC's manager that the offer would be submitted to REMC's Board of Directors. On September 13, 1966, Callon was informed by the REMC manager that the board was not interested in selling. In December, Callon personally delivered to REMC's manager a written offer to purchase the property located in that area and was again told that the offer would be submitted to the board. The written offer was returned by mail without any further correspondence.

At no time was any counter offer or counter proposal made by REMC, and at no time were any comments or suggestions tendered by REMC in regard to any apparent inadequacies of the offers made by PSI. The negotiations for the property within 5-67 were substantially the same.

PSI subsequently filed two condemnation suits against REMC in the Franklin Circuit Court on April 21 and May 15, 1967. American Fletcher National Bank, as trustee, and the United States, as mortgagee, were added as parties, but have not joined in this appeal. These two actions were subsequently consolidated. In September, 1975, hearings were finally held on REMC's lengthy objections to the condemnation complaints of PSI, and on May 12, 1976, the court sustained the objections of REMC and dismissed the complaints, finding specifically that the Board of Directors of PSI had failed to authorize the filing of the actions or the purchase of REMC's property.

Since REMC challenges the jurisdiction of this Court to rule on the issues raised in the motion to correct errors of PSI, we shall first consider those issues properly raised by REMC. REMC first contends that we should not review on appeal the issues raised by PSI because the trial court failed to make specific findings of fact and conclusions of law, pursuant to Trial Rule 52, as to the specific objections filed by

REMC. In its judgment, the trial court specifically found that the Board of Directors of PSI was required to authorize the purchase or condemnation of the property and that the Board had failed to do this. The Court then stated generally that REMC's objections were sustained without making any findings specifically addressed to the numerous other objections of REMC.

Although REMC, in its brief, attempts to raise an issue regarding the failure by the trial court to make specific findings after a timely request by REMC pursuant to Trial Rule 52(A), we note that REMC did not rate this issue by filing a motion to correct errors, and therefore waived any issue in that regard. *In Re Adoption of Graft* (1972), 153 Ind. App. 546, 288 N.E.2d 274; *Loudermilk* v. *Feld Truck Leasing Co. of Indiana* (1976), 171 Ind. App. 498, 358 N.E.2d 160. In addition, REMC does not recognize that a trial court may make special findings as to some issues in a case and a general finding as to the remaining issues. *Hunter* v. *Milhous* (1973), 159 Ind. App. 105, 305 N.E.2d 448. While the trial court here might have erred in failing to make specific findings after a timely request, that error is not jurisdictional, is not properly before us, and will not be considered.

REMC further asserts that, in any event, this Court should do no more than remand this case for further findings of fact by the trial court. With that we cannot agree. As stated above, the issues raised by PSI are properly before us, having been decided adversely to PSI by general and special findings of the trial court and raised in a motion to correct errors. No purpose would be served by such a remand.

REMC also argues that the trial court did not have subject matter jurisdiction. It contends that jurisdiction should be in the Public Service Commission due to an earlier dispute between the parties as to operating authority and cites *Decatur REMC* v. *Public Service Company of Indiana, Inc.* (1971), 150 Ind. App. 193, 275 N.E.2d 857. However, that

case involved only a question as to service rights between utilities, which is properly within the jurisdiction of the Public Service Commission, and did not involve a condemnation under § 18A. *See: Decatur County REMC v. Public Service Company of Indiana* (1974), 159 Ind. App. 346, 307 N.E.2d 96.

We believe REMC has confused the concepts of subject matter jurisdiction and jurisdiction over a particular case. See: WILTROUT, PRACTICE, § 122. The former concerns whether a court has jurisdiction over a particular class of actions while the latter concerns whether a court has jurisdiction over a particular case. Obviously, a court can have jurisdiction over an entire class of actions but not have jurisdiction over a particular action within that class due to the facts of that particular case. *Farley v. Farley* (1973), 157 Ind. App. 385, 300 N.E.2d 375; *Newton v. Board of Trustees for Vincennes University* (1968), 142 Ind. App. 391, 235 N.E.2d 84. In the case at bar, REMC is not challenging the jurisdiction of the Franklin Circuit Court to hear a case in condemnation, which is the relevant class of actions. Rather it is attacking the court's jurisdiction to hear this particular condemnation case because of certain circumstances and events related to this case.

REMC raised the issue of jurisdiction over the particular case in a motion to dismiss. The trial court then ruled against REMC on this point, and REMC has failed to cite that ruling as an error in a motion to correct errors. Therefore, REMC has waived any issue involving jurisdiction over this particular case. *Farley v. Farley, supra.*

We shall now consider the issues raised by PSI in its Motion to Correct Errors and argued in its brief.

PSI first assigns as error the finding of the trial court that the Board of Directors of Public Service had sole responsibility for authorizing the condemnation actions, that the

Board had not authorized the actions, and its conclusion that the actions should therefore be dismissed.

The trial court's decision in this case was entered prior to this court's decision in *Decatur County REMC* v. *Public Service Company of Indiana, Inc.* (1976), 171 Ind. App. 87, 355 N.E.2d 420 in which we held that specific authorization by the Board of Directors of PSI was not necessary in order to initiate an almost identical suit. In the face of that authority, REMC has respectfully requested that we reconsider our holding in the latter case and affirm the judgment of the trial court. After giving due consideration to REMC's arguments, we now affirm our prior holding and hold that the trial court in this case erred in sustaining this objection.

As in its prior arguments, REMC has cited no cogent authority to sustain its contention that the Board of Directors of PSI must specifically authorize the initiation of a condemnation suit under Section 18A. REMC has first cited several old railroad cases which are totally inapposite to the instant case. REMC has also cited as authority *City of Greenfield* v. *Hancock County REMC* (1974), 160 Ind. App. 529, 312 N.E.2d 867. We have reviewed the holding in that case with regard to the authorization required to institute a suit in condemnation and find nothing to sustain REMC's position. The Court in that case held that a municipality must follow the procedures prescribed by the legislature for a municipality and was concerned not at all with the procedures to be followed by a private corporation. *Wampler* v. *Trustees of Indiana University* (1961), 241 Ind. 449, 172 N.E.2d 67 is cited as authority that a specific resolution must be passed by the appropriate governing body before a power of eminent domain can be exercised. However, not only is that case distinguishable on its facts, but the statute delegating the power of eminent domain to Indiana University in that case specifically required the Board of Trustees of Indiana Univer-

sity to use its own judgment in exercising that power. No such requirement can be found in § 18A, which reads as follows:

"Whenever a municipality in which a public utility . . . is rendering electric utility service under a franchise, license or indeterminate permit [franchised utility] . . . annexes additional territory and such annexed territory includes any territory in which the franchised utility was not authorized to render electric utility service immediately prior to such annexation but in which some other public utility (including a corporation organized, or admitted to business, under this act) . . . [other utility] was lawfully rendering electric utility service at such time, then the franchised utility and the other utility *shall* promptly negotiate for the purchase by the franchised utility of the property owned by the other utility within the annexed territory and useful by the other utility in or in connection with the rendering of an electric utility service therein. In the event that such property has not been purchased by the franchised utility within 90 days after such annexation takes place, then the franchised utility may bring an action in circuit or superior court of the county where such municipality (or the major part thereof in area) is located against the other utility, as defendant, for the condemnation of such property of the other utility. . . ." (Emphasis added).

It seems that REMC is asking us to read into § 18A a requirement that the board of directors pass a resolution authorizing each and every suit instituted under this section because certain other statutes contain such a requirement. This we cannot do. Had the legislature intended such a requirement, it could easily so have provided, as it did with the statute in *Wampler*.

REMC finally cites IC 1971, 23-1-2-11 (Burns Code Ed.) as requiring specific authorization by the board of directors:

"The business of every corporation shall be managed by a board of directors."

While this is certainly a proper statement of corporate law in general, REMC is attempting to expand this generality too far. To require the express approval by the board of directors for every decision affecting the ordinary business of the corporation would be to ignore the realities of the modern

business world. It has always been recognized that it is not only proper but in fact necessary for a board of directors to delegate its responsibility of management:

> "The directors have the power, without statutory authority, to delegate to officers, agents, or executive committees, the power to transact not only ordinary and routine business, but business requiring the highest degree of judgment and discretion. The power expressly given by statute to the board of directors 'to appoint such subordinate officers and agents as the business of the corporation may require' does not limit or diminish the common law power to delegate authority." 19 AM.JUR.2d Corp. § 1160, page 587.

It has also been recognized that this power of delegation extends to the commencement of legal actions:

> "A formal vote of authorization by the board of directors is not necessary for the institution of a suit by a corporation." 19 AM.JUR.2d Corporation, § 1452, p. 842.

The propriety of delegating such responsibility is also recognized in 9 Fletcher Cyclopedia Corporations, § 4216, which goes on to state the rule that the failure by the board to expressly approve a legal action constitutes no defense to that action in most cases:

> "Resolutions authorizing an action or defense need not be formally passed and recorded so far as the adverse party in litigation is concerned." P. 18.

*See also: Metryclub Gardens Association* v. *Council* (La. App. 1948), 36 So.2d 56; *Pacific Savings & Loan Assn. of Tacoma* v. *Corbett* (1929), 155 S.W. 45, 283 P. 479.

In his work on the law of eminent domain, Nichols states that an objection to a condemnation suit, in the absence of a specific statutory requirement, cannot be based upon a lack of express authorization by the board of directors of a corporation:

> "When a petition for condemnation has been filed on behalf of the corporation by its executive officers, the owner of the land sought to be taken cannot raise the objection that the directors of the corporation had not voted to authorize the filing of the petition." 6 Nichols on Eminent Domain, § 26.131, pp. 26-153 & 26-154.

*See also: Eckart* v. *Fort Wayne and Northern Indiana Traction Company* (1914), 181 Ind. 352, 104 N.E. 762; *Ind. & Mich. Electric Co.* v. *Miller* (1969), 19 Mich. App. 16, 172 N.W.2d 223.

We have reviewed the Indiana law relevant to this issue, both cases and statutes, and can find no authority requiring specific approval by the Board of Directors of PSI for the condemnation suits at issue. To the contrary, we feel such specific approval is not necessary. Therefore, the trial court erred in sustaining this objection.

The next issue raised is whether PSI made a good faith effort to purchase the property owned by REMC as required by § 18A. The record in this case shows that Public Service prepared inventories and appraisals of REMC's property within the annexed areas. From this information, both written and verbal offers were communicated to REMC. The undisputed evidence in the record shows that these offers were rejected by REMC without explanation, that REMC never made any counter offers to PSI, and further, that REMC never attempted to appraise its property or compute its value in any manner.

The pattern of negotiations in this case was substantially the same as those in *Decatur County REMC* v. *Public Service* (1976), 171 Ind. App. 87, 355 N.E.2d 420 and *City of Greenfield* v. *Hancock County REMC, supra,* both of which held the negotiations to be sufficient under the circumstances:

"§ 18A enjoins both utilities to negotiate, and under the circumstances here present, we consider that the City was justified in concluding that an agreement to purchase was not possible at any price the City was willing to pay. Accordingly, the conditions precedent to suit were satisfied." *City of Greenfield* v. *Hancock County REMC, supra,* at 873.

We believe that the requirement of a good faith offer to purchase was satisfied here.

The next issue raised is whether the right of PSI to bring suit lapsed because such authority was not exercised within

a reasonable time. We first note that there is no evidence in the record to suggest an unreasonable lapse of time before the complaints were filed. In any event, the same objection, under similar circumstances, was considered and expressly rejected in two prior actions between these same parties. *Decatur County REMC* v. *Public Service Co. of Indiana, Inc.* (1974), 159 Ind. App. 346, 307 N.E.2d 96; *Decatur County REMC* v. *Public Service Company of Indiana, Inc.* (1976), 171 Ind. App. 87, 355 N.E.2d 420.

The next objection at issue is whether the complaints filed by PSI were legally sufficient. However, REMC has failed to cite any authority or reasoning to support this position. Substantially similar complaints have been upheld in *City of Greenfield* v. *Hancock County REMC, supra,* and *Decatur County REMC* v. *Public Service Company of Indiana, Inc.* (1974), 159 Ind. App. 346, 307 N.E.2d 96, and we feel that the complaints in these actions are also sufficient. REMC's contention that the approval of the Federal Power Commission is needed is without merit, for such transactions are exempt from Federal Power Commission regulation. 16 USC 824(b) ; *Duke Power Company* v. *Federal Power Commission* (DC Cir. 1968), 402 F.2d 930.

Once again, the issue is raised as to whether or not these condemnation actions brought under § 18A interfere with or frustrate the federal purposes of the National Rural Electrification Act in violation of the Supremacy Clause of the United States Constitution, Art. 6, Clause 2. This same issue has previously been raised by REMC and decided adversely to REMC both by this Court and the Indiana Supreme Court. *Decatur County REMC* v. *Public Service Company, of Indiana, Inc.* (1973), 261 Ind. 128, 301 N.E.2d 191; *Decatur County REMC* v. *Public Service Company of Indiana, Inc.* (1974), 159 Ind. App. 346, 307 N.E.2d 96. REMC has cited no authority or reason which would persuade us to alter the decisions rendered in these cases.

Finally, it is asserted by REMC in its objections that both the Indiana Eminent Domain Act, IC 1971, 32-11-1-1 *et seq.* (Burns Code Ed.) and § 18A of the REMC Act are unconstitutional, and that § 18A condemnations are not in the public interest. In this appeal, REMC has not favored us with any reasoning or authority to demonstrate why previous decisions upholding the Eminent Domain Act are either incorrect or inapplicable. Furthermore, the issues as to § 18A have previously been decided against REMC in the two decisions cited immediately above.

The trial court was in error in sustaining the objections of REMC. The judgment must therefore be reversed and remanded, with instructions to overrule the objections of REMC and to appoint appraisers as required by statute.

Lowdermilk, J., concurs.

Hoffman, J. (participating by designation), concurs.

NOTE.—Reported at 363 N.E.2d 995.