DONALD CHAMBERS AND PHYLLIS A. CHAMBERS *v.* PUBLIC SERVICE COMPANY OF INDIANA, INC.

[No. 976S306. Filed September 20, 1976.]

*Hensley, Todd & Castor,* of Madison, *Parr, Richey, Obrem-sky, Pedersen & Morton,* of Lebanon, for appellant.

*Cooper, Cox, Jacobs & Kemper,* of Madison, *Schnaitter & Leininger,* of Madison, *Frank T. Lewis,* of Plainfield, for appellee.

GIVAN, C.J.—The appellee, Public Service Company of Indiana, filed a complaint in condemnation to take the land of the appellants by eminent domain for the construction of a nuclear generating station. Appellants duly filed their objections to the condemnation. Thereafter, appellants proceeded to seek discovery through two sets of interrogatories and request for production and inspection of certain documents. PSI answered the first set of interrogatories, but ob-

jected to the second set and the request for production and inspection of documents. The trial court sustained PSI's objections to the discovery sought by appellants. The trial court then overruled the appellants' objections to condemnation and declared the land in question condemned. The Court of Appeals found that the trial court had improperly denied the discovery sought and reversed and remanded the case. PSI has petitioned for transfer to this Court.

The appellants raise two issues: (1) the sustaining of Public Service Company of Indiana's objections to certain interrogatories and (2) the denial of motions for continuance by the appellants. The Court of Appeals reached only the first issue, holding that the trial court erred in denying the discovery sought. See 328 N.E.2d 478. In this regard the Court of Appeals erred. We therefore grant transfer.

The appellants submitted ten interrogatories to appellee. Appellee answered interrogatory number 10 and objected to interrogatories numbered 1 through 9, which read as follows:

"1. State the names and addresses of all land owners from whom Plaintiff has purchased real estate for the site of the Marble Hill Nuclear Generating Station.

"2. State the name of the land owner, the number of acres purchased from said land owner and the purchase price for each parcel of property purchased by the Plaintiff for the construction of the Marble Hill Nuclear Generating Station.

"3. Did Public Service Company of Indiana establish a budget for the acquisition of real estate for the construction of the Marble Hill Nuclear Generating Station?

"4. If the answer to Interrogatory No. 3 above is in the affirmative, state:

"A. Total amount budgeted for the purchase of the real estate for the Marble Hill Nuclear Generating Station;

"B. The amount of moneys presently paid to land owners for the purchase of the real estate for the Marble Hill Nuclear Generating Station;

"C. State whether or not a budget was established for each landowner for the purchase of the land owner's real estate. If so, state the amount budgeted for each land owner for the construction of the Marble Hill Nuclear

Generating Station.

"5. In the Interrogatories answered April 11, 1974, the Plaintiff stated that the Atomic Energy Commission has the primary jurisdictional authority with respect to the issuance of construction and operating permits for the nuclear generating facility. Please state the other agencies, commissions, etc. that have secondary or additional jurisdictional authority with respect to the issuance of construction and operating permits for the Marble Hill Nuclear Generating Station.

"6. Have permits or approvals been issued by the secondary or additional governmental authorities or agencies for the construction of the Marble Hill Nuclear Generating Station?

"7. Has an application been filed before the Atomic Energy Commission for the construction of the Marble Hill Generating Station? If so, state the date of said application and its present status within the Atomic Energy Commission.

"8. Is approval from the Environmental Protection Agency necessary prior to the construction and operation of the Marble Hill Nuclear Generating Station? If so, state whether it has been obtained from said agency, and if not, has application been made to said agency for approval of the construction of the Marble Hill Nuclear Generating Station?

"9. If approval is not obtained from the Atomic Energy Commission and other governmental agencies, will Public Service Company of Indiana be able to construct the Marble Hill Nuclear Generating Station as presently planned?"

Appellants also sought production of certain documents by appellee, although said request does not appear to have been filed with the trial court. The appellee objected to the requests for production lettered (b), (e) and (h) which read as follows:

"(b) A copy of Public Service Company's application for a permit before the Atomic Energy Commission with all exhibits, including an environmental impact study;

* * *

"(e) A copy of the budget for the acquisition of real estate for the Marble Hill Nuclear Generating Station, containing therein a copy of the budget for the purchase of the defendants' real estate herein;

* * *

"(h) Copies of all applications for all governmental agencies by which the plaintiff has applied for permission to construct Marble Hill Nuclear Generating Station."

Following a hearing the trial court sustained appellee's objections to the interrogatories numbered 1 through 9 and to the motion to produce specifications numbered (b), (e) and (h).

Appellants first claim the trial court erred in sustaining the appellee's objections to the above interrogatories. The scope of discovery is defined in TR. 26(B), which reads in part as follows:

"(B) *Scope of discovery.* Unless otherwise ordered by the court in accordance with these rules, the scope of discovery is as follows:

"(1) In general. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject-matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

In construing a similar rule the federal courts have held that "relevance" is broader in discovery than at trial. See *Tobe Deutschmann Corp.* v. *United Aircraft Prod. Inc.,* (S.D. N.Y. 1953) 15 F.R.D. 363.

However, the information sought must be admissible or be reasonably calculated to lead to admissible evidence. *Provisional Gov't of French Rep.* v. *Tower's Warehouse,* (D.C. N.Y. 1951) 11 F.R.D. 291.

The question at issue in the case at bar is whether or not the appellee has a statutory right to exercise its eminent domain authority in acquiring appellants' property and whether or not in attempting to exercise such authority,

appellee has made a good faith offer to purchase prior to filing condemnation. *Wampler* v. *Trustees of Indiana University*, (1961) 241 Ind. 449, 172 N.E.2d 67.

Appellant urges that interrogatories numbered 1 and 2 are relevant to establish "whether or not the offer to defendant Chambers herein was a good faith offer as compared to the offers made to the other landowners for the same purpose in the immediate vicinity." Here appellant misconstrues the test to be given as to whether or not the offer is in good faith. What constitutes a good faith offer must be determined in light of its own particular circumstances. If a reasonable offer is made in good faith and a reasonable effort is made to induce the owner to accept it, statutory requirements have been met. *Wampler* v. *Trustees of Indiana University, supra.* An offer must be fair and reasonable, not wholly inadequate. 27 Am. Jur.2d *Eminent Domain* § 388 at 258. A perfunctory offer is not sufficient. *Id.* at 257. Certainly an offer must be based upon a reasonable value of the property albeit not necessarily the fair market value of the land. See *Wampler* v. *Trustees of Indiana University, supra.* It has been held that an offer based upon an independent appraisal of the subject land will be deemed sufficient. *Murray* v. *City of Richmond,* (1971) 257 Ind. 548, 276 N.E.2d 519, 28 Ind. Dec. 515.

However, the price paid by the condemnor for other property is not relevant to show the value of the condemnee's property as it was purchased under the threat of condemnation. *Cleveland C.C. & St. L. Ry. Co.* v. *Smith,* (1912) 177 Ind. 524, 97 N.E. 164. Thus the names and addresses of the landowners from whom the appellee had purchased real estate for the site in question or the purchase price for that land are not questions which would be calculated to reach admissible evidence in the case at bar. This information would not lead the appellants to prices paid between a willing buyer and a willing seller. These transactions are in the nature of forced sales and are thus

not reflective of what might constitute a fair or reasonable offer. We therefore hold the trial court did not err in sustaining appellee's objections to appellants' interrogatories numbered 1 and 2.

Appellants next urge the trial court erred in sustaining objections to interrogatories numbered 3 and 4 regarding budgets for the acquisition of real estate. It is their position the answers are relevant to the question of whether Public Service of Indiana made a good faith offer in that it would establish what PSI considered to be a fair market value for the subject property and the other properties for the project. Fair market value is not the test used in the end to determine the good faith of an offer. *Wampler* v. *Trustees of Indiana University, supra.* A budget for an appropriation is not necessarily an index to the reasonable value of the property. The amount budgeted does not logically tend to prove what a reasonable value for the property is and therefore is irrevelant. See *Hancock Truck Lines* v. *Butcher,* (1950) 229 Ind. 36, 94 N.E.2d 537. We would further observe that budgetary constraints cannot be used to defeat a condemnation. The lack of immediately available funds is not grounds for abating condemnation. *Joint County Park Bd.* v. *Stegemoller,* (1949) 228 Ind. 103, 88 N.E.2d 686; *City of Lebanon* v. *Public Ser. Co. of Ind.,* (1938) 214 Ind. 295, 14 N.E.2d 719. Therefore, interrogatories numbered 3 and 4 were not relevant to the subject matter. The trial court did not err in sustaining the objections thereto.

Appellants next claim the trial court erred in sustaining objections to interrogatories numbered 5, 6, 7, 8 and 9. It had already been established by prior interrogatories that government approval was necessary before a nuclear generating facility could be built on the land which appellee sought to acquire. However, prior approval by a governmental authority is not necessary to land acquisition by eminent domain. See *Gage* v. *U.S. Atomic Energy Commission,* (1973) 156 U.S. App. D.C. 231, 479 F.2d

1214; *Gage* v. *Commonwealth Edison Co.,* (N.D. Ill. 1972) 356 F. Supp. 80. We therefore hold it was not necessary for PSI to have obtained the necessary permits from the federal agencies prior to acquiring the land.

Appellants next claim the trial court erred in sustaining objections to requests lettered (b), (e) and (h). As above noted, request lettered (e), the same being a request for a copy of the budget for the acquisition of the real estate involved, is clearly irrelevant to the subject matter of this action. Requests lettered (b) and (h) also are not relevant to the proceedings for condemnation. As above pointed out, prior approval by governmental authority is not necessary to the maintenance of an action in condemnation. Therefore it also follows that a copy of the application for the permit or copies of applications to any other governmental agencies are immaterial to this cause of action. These requested documents relate to collateral matters only and are not pertinent to the condemnation. Thus the trial court did not err in sustaining the objections to the motion to produce. TR. 26 (B) (1).

Appellants next urge the trial court erred in denying their motion for a continuance. In so doing they recognize that the granting or denying of a continuance is within the discretion of the trial court and that this Court will review that discretion only to ascertain whether there has been an abuse. In this regard both parties have cited *Flick* v. *Simpson,* (1969) 145 Ind. App. 698, 252 N.E.2d 508, 19 Ind. Dec. 369; *Hambey* v. *Hill,* (1971) 148 Ind. App. 662, 269 N.E.2d 394, 25 Ind. Dec. 509. Appellants set out the factual situation concerning the pleadings which were pending before the court, including their motions to produce and a petition for change of venue from the judge. There would be no question but what the appellants would have been entitled to a continuance had the court ruled in their favor on the motions to produce. They reasonably would be entitled to examine the material produced in order to better present their case. However, in view of the fact that the trial court was cor-

rect in denying the motions as above set out in this opinion, we see no reason to second guess the trial judge in his discretionary duty to pass upon the motion for a continuance. After a full presentation of the facts before the trial judge, he obviously could find no reason why the parties could not proceed with the hearing. Nothing in this record convinces us that he abused his discretion in this regard. We therefore hold the trial court did not err in refusing to grant the continuance requested.

The petition to transfer is granted and the trial court is in all things affirmed.

Arterburn, Hunter and Prentice, JJ., concur; DeBruler, J., dissents with opinion.

### DISSENTING OPINION

DeBruler, J.—In the case at bar, Public Service Company of Indiana brought this eminent domain proceeding against Phyllis and Donald Chambers who owned 150 acres of land in Jefferson County, Indiana. Public Service Company condemned their entire real estate for the express purpose of constructing the Marble Hill Electric Generating Station. It was established by answers to interrogatories that the site for this proposed nuclear generating facility was subject to approval by the Atomic Energy Commission and the Environmental Protection Agency. It seems clear to me that the applications of the Public Service Company for site approval by these agencies, and any orders of those agencies in response to the applications, if existing, would contain statements of the company and the agencies describing the proposed site for the construction of Marble Hill, and as such would provide these landowners with information which would be "relevant to the subject matter involved" or which would be "reasonably calculated to lead to the discovery of admissible evidence." Ind. R. Tr. P. 26. For example, the absence of all or part of the land owned by these landowners from the site description in either the applications or the agency orders,

would itself be admissible on the issue of the necessity of the take, or would in turn lead to the discovery of further evidence that the subject land did not comprise part of the site for the Marble Hill Station. And further as pointed out by Judge Lybrook for the First District Court of Appeals, the denial, if any, of an application for a permit to proceed by any governmental agency empowered to do so would be relevant and admissible on the question of whether Public Service Company was acting illegally in condemning this land.

NOTE.—Reported at 355 N.E.2d 781.