Ruby M. UNGER, Howard Morris Unger,
Wayne Lewellyn Unger,
Defendants-Appellants,

.v.

INDIANA & MICHIGAN ELECTRIC
COMPANY, an Indiana Corporation,
Plaintiff-Appellee.

No. 1–380A63.

Court of Appeals of Indiana,
First District.

May 19, 1981.
Rehearing Denied July 1, 1981.

Max E. Goodwin, Mann, Chaney, Johnson, Hicks & Goodwin, Terre Haute, Jesse H. Bedwell, Sullivan, for defendants-appellants.

Thomas W. Yoder, Livingston, Dildine, Haynie & Yoder, Fort Wayne, for plaintiff-appellee.

## STATEMENT OF THE CASE

NEAL, Presiding Judge.

Ruby M. Unger, Howard Morris Unger, and Wayne Lewellyn Unger (the landown-ers) appeal an interlocutory order of the Sullivan Circuit Court overruling their objections to a complaint in condemnation filed by Indiana & Michigan Electric Company, an Indiana Corporation (I & M), and appointing appraisers.

We reverse.

## STATEMENT OF THE FACTS

The undisputed evidence discloses that on October 19, 1978, in the course of securing rights of way for I & M's proposed Rockport-Breed 765 KV line, Loren Shaleen, an I & M agent, offered Ruby Unger $2,320 for an easement across the landowners' property. The amount of the offer was determined by reference to a standard schedule maintained by I & M. Shaleen testified on direct examination as follows:

"Q. Okay, what was the amount of the offer?

A. The offer was for approximately fourteen hundred and twenty feet at minimum, at a dollar a lineal foot as we crossed, which would have been fourteen hundred and twenty dollars. In addition to that there'd be one tower location on the south part of the property. That would be another additional nine hundred dollars payment.

Q. So what was the total amount that you offered?

A. Twenty three hundred and twenty dollars."

On cross examination Shaleen testified:

"Q. And was it you who determined the amount of the offer?

A. Ah, not directly it wasn't myself. It's on a scheduled payment.

Q. And that's your schedule of a dollar a foot and nine hundred dollars per tower.

A. Yes.

Q. And are you an appraiser?

A. Ah, I'm a right of way agent in the field qualified to recognize property.

Q. Your offer did not take into account anything about the property other than that it was some type of cultivated land, did it?

A. Our offer was for an easement, the one structure.

Q. Well, you didn't go out and make an appraisal of the Unger property yourself?

A. I viewed the property.[1]

Q. Sir, could you answer the question? Did you go out and make an appraisal of the Unger property?

A. No, I didn't." (Footnote added.)

The following month Shaleen again offered Ruby Unger $2,320 for the easement. She refused the offer but indicated she would be willing to sell the property outright; she suggested the land was worth $4,000 per acre.

Richard Fohrer, a senior right of way agent for I & M testified that in December of 1978 he offered Ruby Unger $3,782 for an easement across the property. The amount of the offer was determined from a new standard schedule which was to take effect in the very near future. The schedule provided for the payment of $1.25 per lineal foot and $2,000 per tower.[2] Ruby rejected this offer. Fohrer than tendered the uniform offer in accordance with Ind. Code 32–11–1–2.1; I & M offered $5,000 for the easement. The figure was larger because approximately $1,200 was added for potential damages during the construction of the line.[3] The uniform offer was not accepted.[4]

Fohrer testified he is not an appraiser and he did not obtain an appraisal of the Unger property. He stated he had done nothing to determine the value of the landowners' property, in particular; the offer was standard for cultivated land from Rockport to Breed. He further testified, however, he was aware land values in Sullivan and Knox counties had increased 300 per cent over the past ten years.

On direct examination Shaleen was asked what kind of acceptance offers based on the schedule had received in this community or area. The landowners objected on the ground of irrelevance, asserting the degree of acceptance of offers made under threat of condemnation would not indicate fair market value. The court sustained the objection. However, on cross-examination of senior agent Fohrer, the landowners posed the following questions:

"Q. On what did you base your opinion (strike that). Your offer states that in your opinion you have a fair market value.

A. Yes, sir.

Q. How did you go about determining the fair market value of the easement and any damage to the remains?

A. The value placed on this property was an accepted value by others along the route or the line.

Q. In other words what you thought you'd had in the past or would able,

"Q. Well, how did you determine what the construction damages would be on the Unger property?

A. We estimate that there is going to be approximately two hundred foot area around the tower, the center point of the tower that would be damages if there were crops out there and which would constitute an acre or approximately thereso, that the remaining distance across the property on center line of twelve hundred twenty-five feet times an estimated area of sixty feet in width would amount to about 2.69 acres for which we allocated four hundred fifty dollars in potential construction damages, per acre."

---

1. Shaleen stated he observed nothing to contraindicate the application of the standard schedule.

2. The standard schedule, which was applied state- or service area-wide, had provided for payments of $1.00 per lineal foot and $500 per tower in 1969. In late 1978, when Shaleen made his offer, the schedule provided for payments of $1.00 per lineal foot and $900 per tower. The schedule as adjusted at the turn of 1979 to take into account increased land values provided for payments of $1.25 per lineal foot and $2,000 per tower.

3. Fohrer explained the calculation of potential damages as follows:

4. Howard and Wayne Unger were also tendered uniform offers; neither accepted.

would be able to now buy it for under threat of condemnation, is that true?

A. Yes.

Q. You made no comparisons of actual fair market sales between willing buyers and willing sellers without the threat of condemnation, did you?

A. No, we did not."

On redirect examination Fohrer was asked the degree of acceptance offers based on the schedule had received. The landowners again objected to the admission of such evidence as irrelevant. The court overruled the objection and Fohrer answered that in Sullivan county over ninety per cent of such offers had been accepted.

## ISSUES

The landowners state the issues as follows:

I. "Whether the 1977 amendments to the 1905 Eminent Domain Act, I.C. 32–11–1–2.1, require a condemnor to make a pre-condemnation offer based on an opinion of fair market value;"

II. "Whether, under Indiana case law, a pre-condemnation offer was sufficient, where the condemnor made no effort to base its offer on the value or quality of the particular property involved;"

III. "Whether the trial court improperly admitted and considered, on the issue of whether I & M made a sufficient pre-condemnation offer, evidence of a high degree of acceptance of similar offers by other landowners in the area;"

IV. "Whether the complaint improperly sought, and the trial court improperly ordered condemned, a right of way which does not sufficiently specify the width of the strip of land which is subject to passage, use and control by I & M;"

V. "Whether the complaint improperly sought, and the trial court improperly ordered condemned, a

virtually unlimited right of ingress and egress across Ungers' 80-acre parcel, where the proposed transmission line right of way across that property is readily accessible from a public road without going upon the remainder of the Unger property or the property of any other person;"

VI. "Whether adherence to the route across the Unger property while altering the route elsewhere in the vicinity so that it is no longer straight or direct, constitutes an abuse of I & M's discretion, where no meaningful study of or comparison with alternate routes through Sullivan County has been done."

Our disposition of the first three issues, involving the good faith effort to purchase, obviates a consideration of those remaining.

## DISCUSSION AND DECISION

I & M exercises the power of eminent domain under Ind. Code 32–11–3–1:

"Any corporation organized under the law of the state of Indiana, authorized by its articles of incorporation to furnish, supply, transmit, transport or distribute electrical energy . . . to the public or to any town or city . . . is hereby authorized and empowered to take, acquire condemn and appropriate land, real estate or any interest therein, for carrying out such purposes and objects together with all accommodations, rights and privileges deemed necessary to accomplish the use for which the property is taken. . . ."

Ind. Code 32–11–3–2 provides:

"The condemnor may take, acquire, condemn and appropriate a fee simple estate, title and interest in such quantity or amount of land as it deems necessary for its proper uses and purposes, except that for rights-of-way, the condemnor shall take, acquire, condemn and appropriate an easement."

Ind. Code 32–11–3–3 requires the appropriation and condemnation of lands and easements be accomplished pursuant to the

terms and conditions of, and in accordance with the procedures set forth in, the 1905 eminent domain act and all amendatory acts thereof, that being Ind. Code 32–11–1–1 et seq.

As a condition precedent to the right to maintain an action in condemnation, Ind. Code 32–11–1–1,[5] Ind. Code 32–11–1–2,[6] and Ind. Code 32–11–1–2.1[7] require the condemnor to attempt to negotiate a purchase of the land or interest it deems necessary to the accomplishment of its public purpose. *Morrison v. Indianapolis & W. Rwy. Co.*, (1906) 166 Ind. 511, 76 N.E. 961; *Slider v. Indianapolis & L. Traction Co.*, (1908) 42 Ind.App. 304, 85 N.E. 372. A good faith effort to purchase entails an offer of a reasonable amount, i. e. a reasonable offer, and a reasonable effort to induce the owner to accept it, i. e. good faith negotiation.[8]

*Wampler v. Trustees of Indiana University*, (1961) 241 Ind. 449, 172 N.E.2d 67.

The case at bar is an interlocutory appeal from the trial court's denial of objections to the action in condemnation. The critical issue is whether the trial court erred in concluding I & M made a good faith effort to purchase. On appeal the landowners argue:

"Prior to enactment of I.C. 32–11–1–2.-1, the condemnor was required to make only a fair and reasonable offer 'based upon a reasonable value of the property albeit not necessarily the fair market value. . . .' *Chambers v. Public Service Company of Indiana*, (1976) 265 Ind. 336, 341, 355 N.E.2d 781. By enacting I.C. 32–11–1–2.1 the legislature obviously intended to set uniform standard for pre-condemnation offers, and the required

---

5. Ind. Code 32–11–1–1 provides:
 "Before proceeding to condemn, such person, corporation or other body may enter upon any land for the purpose of examining and surveying the property sought to be appropriated or right sought to be acquired; and *shall make an effort to purchase* for the use intended such lands, right-of-way, easement or other interest therein *or other property or right*." (Emphasis added.)

6. Ind. Code 32–11–1–2 provides:
 "If such a person, corporation or other body *shall not agree* with the owner of the land or other property or right, or with such guardian, touching the damages sustained by such owner, as provided in the last section, the person, corporation, or other body so seeking to condemn may file a complaint for that purpose in the office of the clerk of the circuit or superior court of the county where such land or other property or right is situated.
 Such complaint shall state:
 \* \* \* \* \* \*
 Sixth. That such plaintiff has been *unable to agree* for the purchase of such lands or interest therein or other property or right with such owner, owners or guardians, as the case may be. . . ." (Emphasis added.)

7. Ind. Code 32–11–1–2.1 (Supp. 1980) provides:
 "(b) As a *condition precedent* to filing a complaint in condemnation, and excepting any action pursuant to IC 8–1–13–19, a condemnor may enter upon the property or interest therein as provided in this chapter, and shall at least thirty (30) days prior to filing such complaint *make an offer to purchase* the property or interest therein, *in the form*

prescribed in subsection (d). The offer shall be served personally or by certified mail upon the owner of the land or easement thereon, or his designated representative, for which condemnation is sought." (Emphasis added.)

8. Although distinguishable, these two elements of the good faith effort to purchase are interrelated and, in most cases, are considered together. In *Chambers v. Public Service Company of Indiana*, (1976) 265 Ind. 336, 341, 355 N.E.2d 781, the Supreme Court, in reviewing the condemnor's sustained objections to interrogatories, noted:
 "What constitutes a good faith offer must be determined in light of its own particular circumstances. If a reasonable offer is made in good faith and a reasonable effort is made to induce the owner to accept it, statutory requirements have been met. *Wampler v. Trustees of Indiana University, supra.* An offer must be fair and reasonable, not wholly inadequate. 27 Am.Jur.2d *Eminent Domain* § 388 at 258. A perfunctory offer is not sufficient. *Id.* at 257."
 The stated requirement that an offer be fair and reasonable refers to the amount of the offer; 27 Am.Jur.2d *Eminent Domain* § 388 (1966) at 258 cites Annot. 90 A.L.R.2d 204 (1963), § 6, which annotates offers of inadequate sums. The requirement that an offer not be perfunctory pertains to the effort of negotiating a purchase on agreeable terms; 27 Am.Jur.2d *Eminent Domain* § 388 at 257 cites 90 A.L.R.2d 204, § 3, which annotates, generally, the necessity of good faith negotiation.

uniform offer language leaves no doubt that *the legislature intended to require the condemnor to form an opinion of the fair market value of the easement sought, and to tender an offer based on that opinion before filing suit."* (Emphasis added.) [9]

The landowners assert the evidence in the record clearly and indisputably shows I & M did not make a reasonable effort to determine, or to form an opinion of, the fair market value of their property or the easement across it, and thus failed to make a reasonable and fair offer, which is an essential element of a good faith effort to purchase.

A review of those decisions prior to Ind. Code 32–11–1–2.1 in which good faith efforts to purchase were upheld indicates that, in most cases, the condemnor had based its offer upon an appraisal of the property. *Public Service Company of Indiana v. Decatur County Rural Electric Membership Corporation,* (1977) 173 Ind.App. 198, 363 N.E.2d 995; *Decatur County Rural Electric Membership Corporation v. Public Service Company of Indiana,* (1976) 171 Ind. App. 87, 355 N.E.2d 420; *City of Greenfield v. Hancock County Rural Electric Membership Corporation,* (1974) 160 Ind.App. 529, 312 N.E.2d 867; *Wyatt-Rouch Farms, Inc. v. Public Service Company of Indiana,* (1974) 160 Ind.App. 228, 311 N.E.2d 441;

*Blaize v. Public Service Company of Indiana,* (1973) 158 Ind.App. 204, 301 N.E.2d 863. Good faith disagreements between condemnors' and landowners' appraisers were insufficient to sustain objections to the proceedings in condemnation. *Decatur County REMC, supra; City of Greenfield, supra; Wyatt-Rouch Farms, Inc., supra.* Furthermore, we note that prior to 1977 the Supreme Court had held that a single offer based upon an *independent* appraisal of the subject land would be deemed sufficient. In *Murray v. City of Richmond,* (1971) 257 Ind. 548, 276 N.E.2d 519, the city filed a condemnation action to acquire certain property under the Redevelopment Act of 1945, Ind. Code 18–7–8–1 *et seq.* The facts showed that independent appraisals were made on behalf of the city pursuant to Ind. Code 18–7–8–16 [10] by which it was determined the property was worth $40,000. The city made an offer to purchase for $40,000; the appellants asked $500,000; the appellants were informed the city would go no higher; the appellants reduced their price to $100,000; the city filed an action in condemnation.[11] The appellants asserted the uncompromising and non-negotiated $40,000 offer violated Ind. Code 18–7–8–16 which governs acquisition by purchase and reads in part as follows:

> *"Negotiations* for the purchase of property may be carried on directly by the

---

**9.** The uniform offer set forth in 1977 in Ind. Code 32–11–1–2.1(d) provides in pertinent part:

"It is our *opinion* that the *fair market value* of the (property) (easement) we want to acquire from you *is* $_____ and, *therefore,* _____ (condemnor) *offers* you $_____ for the above described (property) (easement)." (Emphasis added.)

The language quoted from *Chambers, supra,* is only a portion of one sentence excerpted from a brief summary of the law of eminent domain. The complete sentence reads as follows:

"Certainly an offer must be *based upon* a *reasonable value* of the property albeit *not necessarily* the *fair market value* of the land. See *Wampler v. Trustees of Indiana University, supra.*" (Emphasis added.)

265 Ind. at 341, 355 N.E.2d 781.

**10.** Ind. Code 18–7–8–16 provides in pertinent part:

"The commissioners shall first approve and adopt a list of the real estate and interests therein to be acquired and the price of each

parcel or interest to be offered to the owners thereof, which prices shall not exceed the average of the two (2) independent appraisals theretofore procured by the commissioners. The prices indicated on such list shall not be exceeded unless specifically authorized by the commissioners, or to the extent determined by the court in case condemnation proceedings are instituted."

**11.** Ind. Code 18–7–8–17 provides in pertinent part:

"Whenever the commissioners shall deem it necessary to acquire real estate in any blighted area by the exercise of the power of eminent domain, they shall adopt a resolution setting out their determination to so proceed and directing their attorney to file a petition in the name of the city on behalf of the department of redevelopment, in the circuit or superior court of the county in which such real estate deemed is situated...."

commissioners, by their employees, or by expert negotiators employed for that purpose. The commissioners shall adopt a standard form of option for use in such *negotiations*, but no option, contract or understanding relative to the purchase of real estate shall be binding on the commissioners until approved and accepted by the commissioners in writing." (Emphasis added.)

The appellants also asserted the condemnor's actions did not constitute a good faith effort to purchase under the eminent domain act. The Supreme Court held:

"We do not interpret the word 'negotiations' in the statute to mandate a series of encounters of offers and counter-offers in an attempt to arrive at a price. *Where, as here, the condemning authority has employed professional appraisers and has based its firm offer to purchase on figures presented to it by its appraisers, we hold that such an offer to purchase meets the requirement to negotiate as set out in the statute.*

In the case at bar the appellee alleged in its complaint that it had attempted to purchase the property as required by the statute. This Court has previously held:

'The attempt to agree need not be pursued further than to develop the fact that an agreement to purchase is not possible at any price which the condemnor is willing to pay . . . .' *Wampler v. Trustees of Ind. University* (1961), 241 Ind. 449, 172 N.E.2d 67. We, therefore, hold the trial court did not err in finding that there had been adequate negotiations to purchase the property prior to the filing of the condemnation action." (Emphasis added.)

257 Ind. at 553, 276 N.E.2d 519. *Accord Highland Realty, Inc. v. Indianapolis Airport Authority,* (1979) Ind.App., 395 N.E.2d 1259.[12]

Notwithstanding the prevalence of, and preference for, offers based upon appraisals, in at least one case our Supreme Court upheld an offer to purchase based upon previous successful offers to purchase adjacent lands of the same owner. In *Wampler, supra,* the interlocutory appellants objected to the taking of their land, an entire lot in fee, on the ground the condemnor had not made a good faith effort to purchase. They argued the condemnor had not offered what they believed to be fair market value. The appellants relied upon a Michigan decision, *In re Rogers,* (1928) 243 Mich. 517, 220 N.W. 808, in which the condemnor offered $300 and $500 per acre for land, the lowest value of which placed upon it at the hearing on objections was $2,500 per acre. In *Rogers, supra,* the Michigan court stated:

"A bona fide effort to purchase involves a willingness to pay the market value of the land wanted, and this means the amount for which the property would actually sell at the time."

220 N.W. at 811. However, its holding that the condemnor failed to make a good faith effort to purchase appears to have been based upon a finding that the offer of $300 per acre "constituted no real effort to purchase; was perfunctory only, for it negatived any purpose to negotiate." 220 N.W. at 811.

Our Supreme Court determined the circumstances in *Rogers, supra,* varied so widely from the circumstances in *Wampler, supra,* that the former was not controlling. Thus, in reply to the appellants' assertion that a good faith effort to purchase entailed an offer to purchase at fair market value our Supreme Court stated:

"Prior decisions of this court have not followed the 'market value of the land' theory and appellants here have advanced no persuasive reason to depart from the general rule, which has been applied in Indiana to determine whether or not an effort to purchase has been made which satisfies the requirements of our statutes on Eminent Domain, and to adopt in lieu thereof the 'market value of the land' theory.

What constitutes a 'good faith' or 'bona fide' offer to purchase? Each case must

---

12. We recently upheld offers based upon independent appraisals in *Oxendine v. Public Service Company of Indiana,* 408 N.E.2d 1348, Ind.App.

be determined in light of its own particular circumstances. However, the authorities generally indicate that *where there is disagreement regarding the value of property, if a reasonable offer is made honestly and in good faith* and a reasonable effort has been made to induce the owner to accept it, the requirements of the statute for an offer to purchase have been met. 18 Am.Jur., Eminent Domain, § 319, p. 962; 29 C.J.S. Eminent Domain § 224b, p. 1167." (Footnote omitted, emphasis added.)

241 Ind. at 456–457, 172 N.E.2d 67. Applying the law to the facts before them the court stated:

"The evidence at the hearing in the present case discloses that appellants' property here involved in Lot Number 8 in Ray Rogers Addition to the City of Bloomington, Indiana; that Lot Number 7 in such addition was purchased by the University for $18,000; Lot Number 9 for $21,000; and that the highest price paid for any single lot acquired in the addition was $25,000. Under these circumstances it cannot be said that an offer of $30,000 for appellants' property 'constituted no real effort to purchase.' The University was not required to pay the price asked by appellants if it was not reasonable."

241 Ind. 456, 172 N.E.2d 67. The Supreme Court held:

"In our judgment record here clearly discloses not only an offer honestly made in good faith, but also a reasonable effort to induce the owners to accept it, and an unwillingness on the part of the owners, appellants, to sell only at a price which appellee deemed excessive. This meets fully the requirements of the statute pertaining to an offer to purchase prior to the filing of condemnation proceedings."

241 Ind. 458, 172 N.E.2d 67. *See Chambers, supra; Dahl v. Northern Indiana Public Service Company*, (1959) 239 Ind. 405, 157 N.E.2d 194.

It is important to note *Wampler, supra,* involved a challenge to a taking in fee; the factors of damages to the residue and construction damages do not appear to have been relevant. The court narrowly held that when attempting to purchase a fee simple interest in property, the value of which is in dispute, the condemnor need not offer, i. e., the landowner cannot successfully challenge the good faith of the effort to purchase by presenting contrary evidence of, fair market value. The condemnor was obligated only to tender a reasonable offer honestly and in good faith.

In 1977 the General Assembly added Ind. Code 32–11–1–2.1 to the eminent domain act. In subsection (2)(d) the statute provides a Uniform Land or Easement Acquisition Offer. In pertinent part the uniform offer states:

"It is our *opinion* that the *fair market value* of the (property) (easement), we want to acquire from you *is* $........., and *therefore*, ....... (condemnor) *offers* you $........ for the above described (property) (easement). You have twenty-five (25) days from this date to accept or reject this offer." (Emphasis added.)

The landowners argue our legislature intended to require a condemnor to form an opinion of the fair market value of the property interest sought and to tender an offer based upon that opinion. They further argue that a condemnor's failure to form such an opinion renders its offer unreasonable and undercuts the good faith of the effort to purchase.

■ A consideration of these arguments begins from the proposition that private property may not be taken for public use without just compensation. Indiana Constitution, Article 1, § 21; *Indiana Toll Road Commission v. Jankovich*, (1963) 244 Ind. 574, 193 N.E.2d 237, *cert. dismissed*, 379 U.S. 487, 85 S.Ct. 493, 13 L.Ed.2d 439. The fundamental purpose of the eminent domain act is to ensure landowners receive just compensation for property taken for public use. *Gradison v. State*, (1973) 260 Ind. 688, 300 N.E.2d 67. The act establishes four successive procedures which may be followed in fulfilling that purpose.

■ As noted above a good faith effort to purchase is a condition precedent to the right to proceed upon a complaint in condemnation. *Slider, supra.* In complying with this requirement, the potential parties to an action in condemnation are presented with an opportunity to agree upon mutually satisfactory terms for what amounts to the relinquishment of certain property rights and thereby to avoid the costs and inherent risks of such a proceeding. Simply stated, if the landowner finds the offer fair and reasonable he may accept it; the action in condemnation is avoided; the compensation he has accepted is presumed to be just. If the landowner does not find the offer fair or reasonable, he simply does not accept it. The good faith effort to purchase having failed, the condemnor may file a complaint in condemnation. Ind.Code 32–11–1–2; Ind.Code 32–11–1–3; Ind.Code 32–11–1–4.

■ Upon notification of the filing of the complaint the defendant landowner may file objections to the action in condemnation, asserting the court lacks subject matter jurisdiction, the condemnor has no right to exercise the power of eminent domain for the land sought, or for any other reason disclosed in the complaint or set up in such objections, e. g., the condemnor failed to make a good faith effort to purchase. Ind. Code 32–11–1–5.[13]

Following a hearing on the matter, if any objection is sustained, the condemnor may amend the complaint or appeal the decision. If the objections are overruled the court appoints appraisers pursuant to Ind.Code 32–11–1–4. The landowner may appeal this interlocutory order, as has been done in the case at bar. Ind.Code 32–11–1–5.

Whenever it becomes appropriate, the court instructs the appraisers in their task:

"They shall determine and report:

First. *The fair market value of each parcel of property sought* to be appropriated, and the value of each separate estate or interest therein;

Second. The *fair market value of all improvements* pertaining to the realty, if any, *on the portion* of the real estate to be *condemned;*

Third. The *damages,* if any, to the *residue* of the land of such owner or owners to be caused by taking out the part sought to be appropriated;

Fourth. Such other *damages,* if any, as will result to any persons or corporation from the *construction* of the improvements in the manner proposed by the plaintiff.

Fifth. In case the land is sought by the state or by a county, for a public highway or by a municipal corporation for a public use that confers benefits on any lands of the owner, the report shall also state the benefits which will accrue to each parcel of property, set opposite each description of the same, whether described in the complaint or not." (Emphasis added.)

Ind.Code 32–11–1–6. The appraisers' award is based upon the relevant factors. The condemnor and the landowner have twenty days to file written exceptions to the appraisers' report and thereby to set the stage for a trial on the matter. Ind.Code 32–11–1–8. However, if neither party files an exception to the report, the award is made by judgment entry. It is assumed the appraisers have properly determined, and landowner has accepted what he believes to be, just compensation for the property rights to be taken.

Prior to the trial on the exceptions there is a final opportunity for the condemnor and landowner to reach an agreement upon just compensation. Ind.Code 32–11–1–8.1 (Supp.1980) provides in pertinent part:

"(a) Not less than ten (10) days before any trial involving the issue of damages, plaintiff shall and defendant may file and serve on the other party an offer of settlement, and within five (5) days thereafter the party served may respond by filing and serving upon the other party

---

**13.** The burden is on the condemnor to plead and, upon objection, to show a good faith effort to purchase and an inability to agree. *Dahl,* *supra; Joliff v. Muncie Electric Light Company,* (1914) 181 Ind. 650, 105 N.E. 234.

an acceptance or a counter offer of settlement. *The offer shall* state that it is made under this section and *specify the amount,* exclusive of interest and costs, *which the party serving the offer is willing to agree to as just compensation and damages for the property or interest therein sought to be taken.* The offer or counter offer supersedes any other offer previously made under this chapter by the party." (Emphasis added.)

Finally, at the trial on the exceptions the landowner bears the burden of proving damages; the jury decides the matter of just compensation. In reaching its decision the jury hears evidence regarding, and determines the amount of the award upon, the five factors listed above in Ind.Code 32–1–1–6.[14]

As submitted by the court appointed appraisers or determined by the jury, just compensation can be no less than the fair market value of the land at the time of the taking. Ind.Code 32–11–1–6 generally instructs the appraisers to determine and report: (1) the fair market value of the property sought, (2) the fair market value of the improvements located thereon, (3) damages to the residue, (4) construction damages, and, in certain cases, (5) benefits to the residue. Ind.Code 32–11–1–6 then provides:

"In estimating the damages specified in the foregoing first, second, third and fourth clauses, no deduction shall be made for any benefits that may result from such improvement, excepting in case of a condemnation by the state or by a county, for a public highway or by a municipal corporation for public use, the benefits, if any assessed, shall be deducted from the amount of damage allowed,

if any, under the foregoing third and fourth clauses; and the difference, if any, plus the damages allowed under the foregoing first and second clauses shall be the amount of the award, *but in no case shall the damage awarded be less than the damages allowed under the foregoing first and second clauses."* (Emphasis added.)

Jahr, Eminent Domain § 107 *et seq.* (1953).

 If a landowner's entire property is taken in fee, the fair market value of the land and any improvements thereon from the basis of the award; furthermore, if the land has a higher market value by reason of use or uses to which it may be adapted, but to which it has not been put, the landowner is entitled to the greater value. *City of Lafayette v. Beeler,* (1978) Ind.App., 381 N.E.2d 1287; Jahr, Eminent Domain §§ 70, 96.[15] Just compensation in cases involving a partial taking is generally the fair market value of the property taken plus all the damages which the residue suffers, including the diminution of the fair market value of the remainder. Severance damages may be awarded only if three conditions are met: (1) simultaneous unity of title, (2) unity of use, and (3) contiguity. In *State v. Church of Nazarene of Logansport,* (1978) 268 Ind. 523, 377 N.E.2d 607, our Supreme Court adopted the following rationale for severance damages from *United States v. 105.40 Acres of Land, etc., Porter City, Ind.,* (7th Cir. 1972) 471 F.2d 207, 211:

"The essence of severance damages is the loss in value to the 'remainder tract' by reason of a partial taking of land. *Sharp v. United States,* 191 U.S. 341, 24 S.Ct. 114, 48 L.Ed. 211 (1903); Jahr, Eminent Domain § 96 (1953). This is predicated on the enhanced value of the 'remainder

---

14. Following the explicit instructions for appraisers, Ind.Code 32–11–1–6 provides:
"Upon the trial of exceptions to such award by either party a like measure of damages shall be followed."

15. In *Southern Indiana Gas & Electric Company v. Gerhardt,* (1961) 241 Ind. 389, 393, 172 N.E.2d 204, Judge Arterburn stated:
"The jury, in determining the damages, must find what the 'fair market value' of the proper-

ty was at the time of the taking. Burns' § 3–1706. The 'fair market value' is a determination of what the land may be sold for on the date of the taking if the owner were willing to sell. Anything affecting the sale value at that time is a proper matter for the jury's consideration in attempting to arrive at a 'fair market value.'"
*See State v. City of Terre Haute,* (1968) 250 Ind. 613, 238 N.E.2d 459.

tract' because of its relationship to the whole prior to the taking."

Jahr, Eminent Domain § 96 *et seq.*[16] Finally, if a condemnor acquires an easement by eminent domain, just compensation can be no less than the difference between the fair market value of the property before the easement is taken and its market value as burdened with the easement. *Northern Indiana Public Service Company v. McCoy,* (1959) 239 Ind. 301, 157 N.E.2d 181. Jahr, Eminent Domain § 160.[17]

■ Although this analysis is brief and its scope is limited, we believe it is correct to state that, with possible adjustments in certain cases for construction damages and benefits conferred on the residue, a determination of just compensation must be based upon a determination of the fair market value of the property sought. Having so concluded, we now return to the purpose of the good faith offer to purchase and the language of the uniform offer.

As noted above, the purpose of the good faith effort to purchase is to bring the landowner and condemnor together, if only briefly, to attempt to negotiate a sale and purchase upon favorable terms. Terms proffered and rejected fall by the wayside as appraisers and juries make their determinations, i. e. the parties' dealings have no bearing upon the ultimate award of just compensation. It is settled a good faith effort requires a reasonable offer and a reasonable effort to induce the landowner to accept it. To all this the General Assembly has added the language of the uniform offer regarding the condemnor's opinion of fair market value.

■ We are of the opinion the General Assembly chose this particular language to indicate its intention to require the condemnor to calculate its offer to purchase upon the same basis as the court-appointed appraisers or the jury must determine their award. We continue to believe

the *offer* need only be *reasonable*; i. e. the mere fact there exists some disagreement or conflict in opinion as to fair market value will be insufficient to sustain an objection to the complaint in condemnation. However, we hold a condemnor must base its offer upon a stated opinion of the fair market value of the property sought.

■ Returning to the facts in the case at bar, it is clear I & M based its offer to purchase upon a state- or service area-wide per foot and per tower schedule of payments. The 1969 schedule had provided for $1.00 per lineal foot and $500 per tower; the 1978–9 schedule increased payments to $1.25 per lineal foot and $2,000 per tower. Senior agent Fohrer stated he was aware property values in the landowners' area had increased approximately 300 per cent over the past ten years. The landowners' property was never appraised. In its brief, I & M argues the scheduled offer was reasonable, asserting the evidence shows that such offers met with ninety-five per cent acceptance by Sullivan county landowners. Of course, this is the evidence to the admission of which the landowners objected on the ground of irrelevance.

In *Chambers, supra,* the appellants argued the trial court had erred in sustaining the condemnor's objections to interrogatories requesting information regarding the names and addresses of all landowners from whom the condemnor had successfully purchased parcels of property, the acreage of said parcels, and the prices paid. Chief Justice Givan stated:

> "[T]he price paid by the condemnor for other property is not relevant to show the value of the condemnee's property as it was purchased under the threat of condemnation. *Cleveland C.C. & St.L.Ry.Co. v. Smith,* (1912) 177 Ind. 524, 97 N.E. 164. Thus the names and addresses of the landowners from whom the appellee had purchased real estate for the site in ques-

---

16. Under certain circumstances the value of benefits to the residue may be deducted. *See Gradison, supra; State v. Lincoln Memory Gardens, Inc.,* (1961) 242 Ind. 206, 177 N.E.2d 655.

*See also State v. Furry,* (1969) 252 Ind. 486, 250 N.E.2d 590.

17. Construction damages may increase the award. Ind.Code 32–11–1–6.

tion or the purchase price for that land are not questions which would be calculated to reach admissible evidence in the case at bar. *This information would not lead the appellants to prices paid between a willing buyer and a willing seller.* These transactions are in the nature of forced sales and are thus not reflective of what might constitute a fair or reasonable offer. We therefore hold the trial court did not err in sustaining appellee's objections to appellants' interrogatories...." (Emphasis added.)

265 Ind. at 341–342, 355 N.E.2d 781. Thus, whether properly admitted in this case, the evidence of the degree of acceptance in Sullivan county of offers similarly based upon the schedule of payments in no way indicated the fair market value of those properties or the instant landowners' property.

In conclusion we observe the following. Real estate is unique. Identical pieces of real estate differently situated can vary widely in value. Therefore a uniform state-wide schedule of values and damages arbitrarily fixed without reference to a particular parcel of real estate is unacceptable to establish a good faith offer to purchase. The mischief of such an arbitrary schedule is demonstrated by the fact that the offer per lineal foot for easements was increased by I & M from $1.00 to $1.25 from 1969 to 1979, while the conceded value of the land rose 300 percent.

Upon these facts, we hold the trial court erred in overruling the landowners' objection that I & M had not made a good faith effort to purchase. The record clearly shows I & M failed to make any reasonable effort to form an opinion of the fair market value of the easement they sought to acquire.[18]

The trial court's order is reversed and the cause is remanded to the trial court with orders to dismiss the complaint in condemnation.

Reversed.

ROBERTSON and RATLIFF, JJ., concur.

18. We find no fault with the determination of construction damages. Ind.Code 32–11–1–6.