**FOR PUBLICATION**

ATTORNEY FOR APPELLANT:

**JAMES C. SPENCER**
Dattilo Law Office
Madison, Indiana

ATTORNEY FOR APPELLEE:

**WILLIAM JOSEPH JENNER**
Jenner Pattison Hensley & Wynn, LLP
Madison, Indiana

FILED

Apr 30 2013, 9:16 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOHN A. HUTCHINSON, | ) | |
| | ) | |
| Appellant-Plaintiff/Counter Defendant, | ) | |
| | ) | |
| vs. | ) | No. 39A01-1208-CC-394 |
| | ) | |
| THE CITY OF MADISON, | ) | |
| | ) | |
| Appellee-Defendant/Counter Plaintiff. | ) | |

APPEAL FROM THE JEFFERSON SUPERIOR COURT
The Honorable Daniel E. Moore, Special Judge
Cause No. 39D01-1103-CC-200

**April 30, 2013**

**OPINION - FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

John Hutchinson appeals the trial court's dismissal without prejudice of the counterclaim for appropriation of real estate filed by the City of Madison ("the City"). Hutchinson also appeals the trial court's determination that an interlocal agreement between the City and Jefferson County ("the County") was valid. We affirm.

**Issues**

Hutchinson raises two issues, which we restate as:

> I. whether the trial court should have dismissed the City's counterclaim for appropriation of real estate with prejudice; and

> II. whether the trial court properly determined that the interlocal agreement between the City and the County was valid.

**Facts**

Hutchinson owns property north and south of Hutchinson Lane in Jefferson County. In 2011, the City and the County entered into an interlocal agreement ("the Agreement") addressing the improvement of Hutchinson Lane. Pursuant to the Agreement, the City was to serve as the lead agency for the design and construction of the improvements, and the City agreed to be responsible for the overall administration of the design and construction. Because portions of the project were located within corporate boundaries of the City and other portions were located within the corporate boundaries of the County, it was necessary for the City to acquire land within the corporate boundaries of the County to complete the project. The project required the

appropriation of approximately four acres of Hutchinson's property by the City for temporary and permanent right-of-ways.

Section One of the Agreement contained nine specific obligations of the City regarding the improvements. Section Two of the Agreement provided, "<u>Obligations of the County.</u> The County shall have no obligation for the Project other than to agree that the City is given the powers to perform and may perform the Project as set forth in Section One above." App. p. 111.

Before formally entering into the Agreement, the City offered Hutchinson $25,107.50 for the property. Hutchinson responded, indicating that the offer did not include an appraisal and suggesting that he would respond to the offer after receiving an appraisal. On March 2, 2011, Hutchinson filed a declaratory judgment action challenging the Agreement. On May 2, 2011, the City[1] filed its answer and a counterclaim for appropriation of the portion of Hutchinson's property it needed for the project. On January 20, 2012, after a hearing, the trial court concluded that the Agreement was valid and entered judgment against Hutchinson on the declaratory judgment action. Hutchinson petitioned to certify the trial court's order for interlocutory appeal, but the trial court denied the request.

On February 8, 2012, Hutchinson filed statutory objections to the City's counterclaim for appropriation, including an assertion that the property had not been properly appraised. On July 25, 2012, the trial court conducted a hearing at which

---

[1] The declaratory judgment action named several City and County entities. Because the City is the only named party on appeal, we refer to them collectively as the City for purposes of this litigation.

Hutchinson presented evidence. On August 6, 2012, the trial court sustained Hutchinson's objection and dismissed the counterclaim without prejudice. Hutchinson now appeals.

## Analysis

As an initial matter, the parties disagree regarding the proper standard of review. Because the underlying facts are not in dispute, and the issues raised by Hutchinson are questions of law, we apply a de novo standard of review and owe no deference to the trial court's determination of such questions. See Tankersley v. Parkview Hosp., Inc., 791 N.E.2d 201, 204 (Ind. 2003).

### I. Dismissal

Before proceeding to condemn, the City was statutorily required to make an effort to purchase the property from Hutchinson. See Ind. Code § 32-24-1-3(b). An effort to purchase must include establishing a proposed purchase price for the property, providing the owner with an appraisal or other evidence used to establish the proposed purchase price, and conducting good faith negotiations. I.C. § 32-24-1-3(c); see also Unger v. Indiana & Michigan Elec. Co., 420 N.E.2d 1250, 1258 (Ind. Ct. App. 1981) (observing that "a good faith effort to purchase is a condition precedent to the right to proceed upon a complaint in condemnation."). On appeal, the City concedes that it violated Indiana Code Section 32-24-1-3(c) because it failed to tender an appraisal when its acquisition offer was presented to Hutchinson. Accordingly, the parties do not dispute that dismissal was proper—they only dispute whether the dismissal should have been with or without prejudice.

4

Hutchinson asserts that the trial court should have dismissed the City's counterclaim with prejudice because it was an adjudication on the merits. Hutchinson also suggests that relitigation of the condemnation action would be barred by res judicata.[2] See Midway Ford Truck Ctr., Inc. v. Gilmore, 415 N.E.2d 134, 136 (Ind. Ct. App. 1981) ("It is generally recognized that a dismissal with prejudice is a dismissal on the merits. . . . As such it is conclusive of the rights of the parties and res judicata as to the questions which might have been litigated.").

Hutchinson claims that the dismissal was an adjudication on the merits because the July 25, 2012 hearing was a "full-blown hearing" on the issue of whether the City complied with Indiana Code 32-24-1-3(c).[3] However, the evidence offered by Hutchinson showed that the City did not provide him with an appraisal and established only that the City did not meet a condition precedent for filing its counterclaim for the appropriation of his property. In other words, although Hutchinson showed that the City's counterclaim was procedurally defective, he did not establish that the City did not have the authority to acquire his property through eminent domain proceedings generally.

In fact, "[t]he state has inherent authority to take private property for public use." Murray v. City of Lawrenceburg, 925 N.E.2d 728, 731 (Ind. 2010) (citing Kelo v. City of

---

[2] In making this argument, Hutchinson seems to equate a final judgment with a decision on the merits. Not all final judgments, however, are adjudications on the merits. See, e.g., Thacker v. Bartlett, 785 N.E.2d 621 (Ind. Ct. App. 2003) (acknowledging that, although the dismissal of plaintiff's original complaint under Trial Rule 12(B)(6) constituted a final judgment, it did not operate as an adjudication on the merits).

[3] Hutchinson's description of the July 25, 2012 hearing is received with caution because much of Hutchinson's evidence focused on the valuation of the property and was not relevant to the issue of whether the City provided him with an appraisal.

New London, 545 U.S. 469, 477, 125 S. Ct. 2655 (2005)). The Indiana Constitution and the Fifth Amendment to the United States Constitution require just compensation if this authority is exercised, and Indiana Code Chapter 32-24-1 outlines the process by which the State or other governmental entity is to initiate eminent domain proceedings. Id. "The fundamental purpose of the eminent domain act is to ensure landowners receive just compensation for property taken for public use." Unger, 420 N.E.2d at 1257. Accordingly, we are not convinced that the failure to comply with Indiana Code Section 32-24-1-3(c) forever bars the state from acquiring that property so long as a property owner receives just compensation for the taking.

This conclusion is supported by Indiana Code Section 32-24-1-8(d), which provides that, if a property owner objects to the proceedings and the objection is sustained, the complaint may be amended or the decision appealed. Although, as the parties acknowledge, the City cannot remedy the failure to provide an appraisal by amending the complaint, we believe this provision is indicative of the legislature's intent to allow the City the opportunity to correct procedural errors and refile the complaint. Also, Indiana Code Section 32-24-1-16 contemplates a taking without the initiation of a condemnation proceeding and allows a property owner to bring a suit for inverse condemnation to recover money damages. Murray, 925 N.E.2d at 731. Surely, if interests in land may be taken for public use without having been obtained under the eminent domain statutes, then at the very least the City should be permitted to refile an action for appropriation upon complying with Indiana Code Section 32-24-1-3(c).

6

We also disagree with Hutchinson's assertion that the City's failure to comply with Indiana Code Section 32-24-1-3(c) is reason enough to dismiss the counterclaim with prejudice because the failure to provide an appraisal frustrates the statutory goal of good-faith negotiations. "[T]he purpose of the good faith effort to purchase is to bring the landowner and condemnor together, if only briefly, to attempt to negotiate a sale and purchase upon favorable terms." Unger, 420 N.E.2d at 1260. "In complying with this requirement, the potential parties to an action in condemnation are presented with an opportunity to agree upon mutually satisfactory terms for what amounts to the relinquishment of certain property rights and thereby to avoid the costs and inherent risks of such a proceeding." Id. at 1258. "Terms proffered and rejected fall by the wayside as appraisers and juries make their determinations, i.e. the parties' dealings have no bearing upon the ultimate award of just compensation." Id. at 1260. Thus, the purpose of the good faith offer requirement is to avoid unnecessary litigation, not to confer a substantive benefit on the property owner, and we are not convinced that the failure to conduct good faith negotiations alone warrants the dismissal of a condemnation action with prejudice.

Given the City's inherent authority to take private property and the statutory scheme for appropriating property, we do not believe that the dismissal based on the failure to provide an appraisal with an offer to purchase was an adjudication on the merits. See, e.g., In re L.B., 889 N.E.2d 326, 333-34 (Ind. Ct. App. 2008) (concluding that the dismissal of a petition to terminate parental rights because parents were not notified of the proceeding as mandated by statute, a procedural precedent that must be performed before a termination action is commenced, was not a judgment on the merits);

7

St. Anthony Med. Ctr., Inc. v. Smith, 592 N.E.2d 732, 736 (Ind. Ct. App. 1992) ("The proper course of action when a plaintiff fails to comply with the [Medical Malpractice] Act is for the trial court to dismiss the complaint without prejudice, thereby allowing the plaintiff to refile after the medical review panel has issued its opinion."); Cf., Creech v. Town of Walkerton, 472 N.E.2d 226, 229 (Ind. Ct. App. 1984) (observing that an adjudication based on the running of a statute of limitation is a judgment on the merits and concluding that, because original claim was dismissed for failing to comply with the notice provisions of the Tort Claims Act, there was an adjudication on the merits barring further pursuit of such claim). Thus, the trial court properly dismissed the City's counterclaim without prejudice.

## II. The Agreement

"Generally, 'Interlocal Agreements,' also referred to as 'Interlocal Cooperation Agreements,' are formal vehicles through which municipalities or political subdivisions may eliminate barriers imposed by jurisdictional lines in order to offer public services more efficiently." City of Carmel v. Steele, 865 N.E.2d 612, 620 (Ind. 2007). "The primary types of agreements are service contracts, under which one local government provides services to another, and joint enterprise contracts, under which two or more local units jointly undertake a project." Id. Indiana Code Section 36-1-7-9 provides:

> (a) This section may be used only for an agreement between an Indiana municipality and the executive of the county in which it is located concerning highway construction and maintenance and related matters.
>
> (b) An agreement under this section must provide for the following:

8

(1) Its duration, which may not be more than four (4) years.

(2) The specific functions and services to be performed or furnished by the county on behalf of the municipality.

In addition, such an agreement may provide for any other appropriate matters.

(c) An agreement under this section may provide for either of the following:

(1) A stipulation that distributions from the motor vehicle highway account under IC 8-14-1, the local road and street account under IC 8-14-2, or both, be made to the county rather than to the municipality.

(2) A stipulation that the municipality will appropriate a specified part of those distributions for purposes listed in the agreement.

(Emphasis added).

Hutchinson argues that comparing the City's obligations with the County's obligations in the Agreement leaves no doubt that the City had all of the obligations and the County had none. According to Hutchinson, Indiana Code Section 36-1-7-9(b)(2) "requires County functions and services to be specifically provided in Interlocal Agreements." Appellant's Br. p. 16. Hutchinson concludes that the lack of specific functions and services to be performed by the County on behalf of the City renders the Agreement invalid.

"In applying a statute, our primary goal is to ascertain and give effect to the Legislature's intent." Crowel v. Marshall County Drainage Bd., 971 N.E.2d 638, 645

(Ind. 2012). The best indicator of legislative intent is the statutory language, and where the statute is clear and unambiguous, we apply it as drafted without resort to the nuanced principles of statutory interpretation. Id. at 646.

Our reading of the plain language of Indiana Code Section 36-1-7-9(b)(2) is that any such agreement must expressly list the specific functions and services to be performed or furnished by a county. We do not read this section as requiring a county to perform or furnish certain functions or services. Here, the Agreement specifically provides, "The County shall have no obligation for the Project other than to agree that the City is given the powers to and may perform the Project as set forth in Section One above." App. p. 111. Thus, the Agreement does include a term detailing the specific functions and services to be performed or furnished by the County as required by Indiana Code Section 36-1-7-9(b)(2).

Further, we disagree with Hutchinson's assertion that there is not any real exchange of promises. By the express terms of the agreement, the County was required to give the City the authority to perform the project, including on land within the County's boundaries. In other words, the County gave up its right to oversee the project. Without more, Hutchinson has not established that the Agreement is invalid.

**Conclusion**

The trial court properly dismissed the City's counterclaim without prejudice. The trial court also properly determined that the Agreement was valid. We affirm.

Affirmed.

NAJAM, J., and BAILEY, J., concur.

10